MONTGOMERY WEB CO. v. H. DIENELT ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 3, 1890—Decided March 31, 1890.
[To be reported.]

1. As fraud can rarely be proved by direct and positive testimony, great liberality is always exercised in the admission of evidence having a tendency to show it, and the party alleging it is entitled to have the jury consider the united force of items of testimony having this tendency; a charge, therefore, which, without directing the view of the jury to this, takes up each of the items separately, dismissing it with the remark that it does not prove the case, is erroneous.

2. When a transfer of property from one corporation to another is, in substance and effect, a transfer by the stockholders of the former to themselves, they retaining their interest in it through holdings of stock in the latter corporation, without other consideration than their previous ownership of stock in the former, the stockholders are not so completely severed from the corporation behind which they hide, as to require the law to ignore the fact that the difference between the two corporations is merely in their names.

(a) A corporation assigned all its property, except a small part left to satisfy the claim of its landlord for rent and proving insufficient therefor, to another corporation newly organized and composed of the same stockholders with the addition of certain creditors of the old company.

Statement of Facts.

The consideration expressed in the assignment was one dollar and the assumption by the new company of certain specified debts of the old, which included all debts owing by it except that due to one creditor.

(b) The claim of the creditor thus excepted was in litigation, and his suit thereon was approaching trial at the date of the assignment. Knowledge of the arrangement was withheld from him, but the other creditors were all notified and assented to it, receiving payment of their claims in full from the new company, some of them in cash and others in shares of its stock. The remainder of said stock, being more than half of it, was issued to the stockholders of the old company, in consideration of their holdings of stock therein:

3. The transfer, being accompanied by such a retention of an interest in the property by the assigning debtor as is within the settled rule of law making such transfers void as to creditors, was fraudulent in law as to the creditor not assenting thereto; and, as the creditors accepting the stock of the new company were not innocent purchasers for value, but knew or were bound to know the nature of the transaction, the non-assenting creditor might follow the specific property transferred and levy on it in the hands of the new corporation.

Before Paxson, C. J., Sterrett, Green, Clark, Williams, McCollum and Mitchell, JJ.

No. 444 January Term 1889, Sup. Ct.; court below, No. 29 December Term 1888, C. P.

On March 8, 1886, on application of the sheriff of Montgomery county, setting forth that certain chattels, levied on as the property of the Aronia Fabric Company, at the suit of Herman Dienelt and George F. Eisenhardt, trading as Dienelt & Eisenhardt, had been claimed by the Montgomery Web Company, the court granted a rule for an interpleader under the act of April 10, 1848, P. L. 450. The rule was made absolute the same day, and subsequently an issue, in which the Montgomery Web Co. was plaintiff, and Dienelt & Eisenhardt, defendants, was framed to determine the claim of title made by the Montgomery Web Company.

At the trial on October 9, 1888, the plaintiff in the issue, the Montgomery Web Co., called Herman Hamburger, who, being shown a paper purporting to be a bill of sale from the Aronia Fabric Co. to the plaintiff of certain chattels a part of which were admittedly the property in dispute, in consideration of one dollar and the assumption by the assignee of certain specified debts of the assignor, testified to the execution

of the paper by the officers of the Aronia Fabric Co., including himself as its president, identified the corporate seal of that company affixed thereto, and stated that the property described in the bill of sale was purchased from said company by the plaintiff company, and was delivered to the latter.

On cross-examination, the witness testified that at the time the bill of sale was made he was president of each of the companies above named; that there was then pending a suit against the Aronia Fabric Co., brought by Dienelt & Eisenhardt, who afterwards recovered therein the judgment for the collection of which the goods in controversy were levied on; that the witness did not attend the trial of that case, and it went by default; that the goods transferred by the bill of sale embraced all the property of the Aronia Fabric Co. except certain looms, which were left at the mill it had operated for the purpose of paying rent and any little claims there might be against them, and the agent of the landlord was so notified; that those looms were afterwards sold on landlord's warrant, as the witness understood, for less than the amount of the rent; that the Montgomery Web Co. was a corporation composed entirely of old stockholders and creditors of the Aronia Fabric Co., embracing all unpaid creditors of the latter except Dienelt & Eisenhardt; that the stockholders in the old company paid no cash for their stock in the new one, but the property was turned over to the new company under an arrangement by which those stockholders received stock in it, equal in amount to their holdings of stock in the old company, and the Montgomery Web Co. paid the claims of all the creditors, other than Dienelt & Eisenhardt, partly in cash and partly in its stock; that no notice of the intention to carry out this arrangement was given to Dienelt & Eisenhardt, because it was supposed the company had a just defence to their claim; that Dienelt & Eisenhardt, having learned of it in some way unknown to the witness, endeavored to prevent the removal of the property by means of an attachment under the fraudulent debtor's act of 1869, but the court dissolved their attachment. Being shown a paper, purporting to be an affidavit made by himself, in connection with the proceedings upon the attachment spoken of, and containing the statement that by the terms of the transfer all the debts of the Aronia Fabric Co.

were to be paid by the Montgomery Web Co., the witness
identified his signature to the affidavit, but denied that he in-
tended to swear to this statement as to Dienelt & Eisenhardt,
who "were excepted all the way through." He testified, fur-
ther, that the amount of stock of the Montgomery Web Co.
that was given to the stockholders of the Aronia Fabric Co.,
was considerably more than half of the entire number of
shares.

Having put in evidence the bill of sale identified by Ham-
burger, the plaintiff rested.

The case then closing on the testimony, the court, WEAND,
J., charged the jury as follows:

Two questions arise in this suit, one of fact and one of law.
The question of fact is for the jury alone; the question of law
will hereafter be decided by the court.

It appears from the testimony that the Aronia Fabric Co.
transferred its property to the Montgomery Web Co. The
stockholders were mostly the same in both corporations. An
arrangement was made by which all creditors, except Dienelt
& Eisenhardt, were either paid in cash or agreed to accept
stock in the new company. All the creditors accepted, ex-
cept Dienelt & Eisenhardt, and the question for you to decide
is as to whether this transfer in this manner was a fraud against
them. If so, your verdict must be in favor of the defendants.
If it was a bona fide transaction, then your verdict must be in
favor of the plaintiff.

[Fraud must be proved and cannot be inferred. What facts
are before you to show that there was any fraud in this trans-
action? The mere fact that they were not provided for would
not in itself be fraud. Now, it appears that a paper was
drawn up and signed by all the creditors except these particu-
lar parties. This was a perfectly legal transaction. If this
transferring of property was not done for the purpose of de-
frauding these particular creditors, it was perfectly proper.] [3]
Now, the facts and circumstances related here to show fraud
are, first, that they were not thus provided for; and, in the
second place, certain declarations were made by the witness,
who was president of this corporation, in an affidavit, in which
he testified that all the creditors had agreed to this transaction

and had been paid. It turns out, as he now says, that that was a mistake, and he did not intend to include Dienelt & Eisenhardt. Does this convince you that this was an honest transaction? Was this a legitimate, fair transaction? ·

[As I have already told you, the law will permit a transaction of this kind, if done for a proper purpose. The jury must be careful not to let their feelings enter into the consideration of this case. They must determine from the facts before them, and from all the inferences to be drawn from these facts. Because Dienelt & Eisenhardt may lose their claim, is not evidence they were intended to be defrauded.] [4] They still have their remedy at law. Can you from this testimony say that when this transfer was made it was made for the purpose of cheating and defrauding them? Unless you can find that, your verdict must be for the plaintiff. That is the only question you have to decide. If you find there was no fraud in this transaction, then I direct you to find a verdict in favor of the plaintiff, subject to the point of law reserved as to whether the plaintiff can recover upon the following facts, viz.:

The Aronia Fabric Co., being indebted to Dienelt & Eisenhardt, sold this property to the Montgomery Web Co., a corporation among whose stockholders were also stockholders in the Aronia Co. The stock in the old company was taken by the Montgomery company as payment of shares of the stockholders of the Aronia company, who thus became members of the new company. All the creditors of the Aronia company, except Dienelt & Eisenhardt, either agreed that the new company should assume payment of their claims, or had their claims paid by said company.

There may be a question of law that although there was no fraud in the transaction, yet this is what is known in law as a legal fraud, but this is for the court.

The plaintiff has asked me to charge you upon the following point:

1. The court is requested to charge the jury that if they believe the evidence in the case, the property levied upon was bona fide sold to the plaintiff, and the verdict must be for the plaintiff, for the goods included in the notice to the sheriff.

Answer: This is true, if the jury find that no fraud was intended upon Dienelt & Eisenhardt.

—The verdict of the jury was in favor of the plaintiff for the goods enumerated in the plaintiff's notice of claim, subject to the point reserved by the court.

The defendant having made a motion for a new trial and for judgment non obstante veredicto, the court, WEAND, J., after argument, delivered the following opinion and decree :

In this case, the court submitted to the jury the question as to any fraud in the sale to plaintiff, and that question is therefore disposed of by the verdict in favor of plaintiff, which establishes the bona fides of the transaction, as a matter of fact. There still remains, however, the question of law as to the right of the Aronia Fabric Co. to dispose of its property without providing for the claim of the defendants. The facts upon which the question arises are embraced in the point reserved, viz.: . . . . . The point raises the question as to whether a private corporation can lawfully dispose of its assets without the assent of all its creditors, there being no actual fraud intended.

The act of 1874, under which the Aronia company was incorporated, gives them the right to hold, purchase and transfer such real and personal property as the purposes of the corporation require, not exceeding the amount limited by its charter or by-laws. The Aronia company sold its personal property to plaintiff and paid or settled with every creditor except defendants, whose claim at that time was disputed. Having subsequently obtained judgment on this claim, they levied on the property thus sold or assigned and claim to have a lien thereon, because the transaction as to them was fraudulent in law. We fail to see the force of this reasoning. Certainly, an individual could have done the same thing without violating any principle of law, and we can see no good reason why a corporation acting in good faith may not also do so. It is, however, said that " while an insolvent debtor may make an absolute sale of his property in payment of his debts, he cannot reserve any portion of the property or its proceeds for his own benefit and advantage : " Bentz v. Rockey, 69 Pa. 71.

Granting this proposition, it does not warrant the contention here. If any of the stockholders of the Aronia company have been benefited by the transaction, they may be liable for this

claim or their interests in the new company attached; but we are slow to believe that the omission of a single creditor from what is otherwise a perfectly fair transaction, will render the whole void, and subject the property in the hands of innocent parties liable for the debt. If this position is correct, then at no time could the stockholders dispose of their plant or stock without first being absolutely sure that every dollar of its debts was paid, which might render the sale and transmission of their assets or stock in trade almost impossible.

That some of the stockholders of the Aronia company took payment in stock of the other company, does not in my view of the case alter the rule which allows a disposition of property in good faith. Here nothing was done secretly, and the jury have found in favor of the bona fides of the transaction, which distinguishes the case from those where actual fraud was intended or a secret trust created. From the testimony, it does not appear that the Aronia company was insolvent. In 7 Gray 393, it was held " that the directors of a manufacturing corporation, as the best means of continuing the business and pursuant to the vote of a majority of the stockholders, though against a protest of a minority, may sell the whole property of the corporation to a new company, taking payment in shares of the new corporation, to be distributed among those of the old stockholders who are willing to take them." See, also, Sargent v. Webster, 13 Metc. 504.

We have not lost sight of the principle that equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognize the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a bona fide purchaser: Railroad Co. v. Howard, 7 Wall. 392. But here the verdict has established the bona fides of the transaction, which ought to protect this property in the hands of the stockholders of the Web company, and of the other creditors of the Aronia company who settled their claims by taking stock in the Web company. If the stockholders of the Aronia company, by reason of their connection with both companies, or by reason of any advantage which they have gained by this proceeding, have violated any rule of law as trustees for creditors, they can be made amenable in other ways, but we think the defendants have no claim upon this particular property.

And now, December 3, 1888, the motion for a new trial and for judgment non obstante veredicto is overruled, and judgment is directed to be entered in favor of the plaintiff on the verdict of the jury.[1]

—Judgment having been entered on the verdict, the defendants took this appeal, specifying that the court erred:

1. In refusing judgment for the defendants non obstante veredicto.[1]

2. In not entering judgment for defendants upon the reserved point.

3, 4. In the portion of the charge embraced in [ ] [3][4]

5. In that the whole charge tended to mislead the jury.

*Mr. Louis M. Childs* (with him *Mr. James S. Williams* and *Mr. Montgomery Evans*), for the appellants:

1. The court dwells in its opinion upon the finding of the jury for the plaintiff, but as the charge withdrew from the consideration of the jury, in the determination of the question of fraudulent intent, facts which tended to establish fraud, the verdict is entitled to no weight. The arrangement by which there was an undisclosed reservation to the stockholders composing the corporation which made the transfer of the property in question, of an interest in the property assigned, through their stock in the new company receiving the transfer, and an intentional exclusion of Dienelt & Eisenhardt from all participation in the proceeds of that property, both buyer and seller having knowledge thereof, was fraudulent per se: McClurg v. Lecky, 3 P. & W. 83; Passmore v. Eldridge, 12 S. & R. 198; Johnston v. Harvy, 2 P. & W. 82; Shaffer v. Watkins, 7 W. & S. 219; Bentz v. Rockey, 69 Pa. 71; Kirker v. Johnson, 13 W. N. 385; 2 Story's Eq. J., § 1252. That other creditors accepted interests in the new company for their claims against the old, will not shield the transaction from the ban of fraud, as most of the cases cited show. Stockholders have no right thus to obtain a preference, even though they be creditors themselves: Hopkins' App., 90 Pa. 76.

2. Our right to follow and seize this property for our debt is shown by the following cases: Chicago etc. R. Co. v. Howard, 7 Wall. 392; Curran v. Arkansas, 15 How. 304; Mumma v. Potomac Co., 8 Pet. 281; Scammon v. Kimball, 1 Otto 362;

Stewart's App., 72 Pa. 291 ; Penna. Trans. Co.'s App., 101 Pa.
576.   The present case is identical with Hibernia Ins. Co. v.
Transportation Co., 13 Fed. Rep. 516, which fully sustains our
position.   See also Barclay v. Mining Co., 9 Abb. Pr., N. S.,
283 ; San Francisco etc. R. Co. v. Bee, 48 Cal. 398.   The court
in effect charged that the stockholders and part of the creditors
of a corporation could get together and divide its property be-
tween them, leaving other known creditors unprovided for, and
the fact of their so doing would be no evidence of an intention
to defraud, but the transaction would be perfectly legal.   It
has always been held that the question whether a debtor, at the
time of an assignment, had enough property left to pay all his
debts, is an important and often a controlling element in the
case.   This was expressly decided in Miner v. Warner, 2 Gr. 448.

*Mr. J. P. Hale Jenkins*, for the appellee :

There was no reservation of any interest to the Aronia Fab-
ric Co. in the proceeds of this sale, and the absence of such
reservation disposes of a large part of the appellant's argument.
The whole of the company's property was not sold, and it was
not believed to be insolvent at the time of the sale.   A corpora-
tion, in the absence of statutory prohibition, may prefer one or
more of its creditors by disposing of its property to them, even
though it be insolvent: Wilkinson v. Bauerle, (N. J.) 5 Cent.
R. 119 ; Catlin v. Bank, 6 Conn. 233 ; Dana v. U. S. Bank,
5 W. & S. 223 ; Ashhurst's App., 60 Pa. 290 ; Sargent v. Web-
ster, 13 Metc. 497 ; and even though the creditors be stock-
holders and officers in the corporation: Smith v. Skeary, 47
Conn. 47.   There is no legislative prohibition of such a sale in
Pennsylvania.   The Aronia Fabric Co. and the Montgomery
Web Co. are two separate concerns, as much so as two indi-
viduals.   Their stockholders are not identical, as in Stewart's
App., 72 Pa. 291, where such a sale was held good.   Moreover,
it is the intent, not the effect of a transfer by a debtor to a
creditor for a debt, that characterizes the transaction as fraud-
ulent or otherwise : Bentz v. Rockey, 69 Pa. 71 ; and the ques-
tion of fraudulent intent was fairly submitted to the jury.

OPINION, MR. JUSTICE MITCHELL :

Two questions are presented in this case : First, whether the

transfer from the Aronia company to plaintiff was fraudulent in fact, as against the appellants; and, secondly, whether it was fraudulent in law.

On the first question, the verdict of the jury was in favor of the good faith of the transaction; but unfortunately it is without weight, as it was rendered under a charge which scarcely permitted any other result, and which was justly open to the exceptions taken to it. Fraud, as has so often been said, can rarely be proved by direct and positive testimony, and great liberality is always allowed in the introduction of evidence having a tendency to show it. " When creditors are about to be cheated," says Chief Justice BLACK in Kaine v. Weigley, 22 Pa. 183, " it is very uncommon for the perpetrators to proclaim their purpose, and call in witnesses to see it done. A resort to presumptive evidence, therefore, becomes absolutely necessary, to protect the rights of honest men from this as from other invasions." The present case followed the usual course. De fendants had to get their testimony from the other side, and from the circumstances, and were not able to make positive and direct proof of the fraudulent intent, but had to rely upon circumstances pointing thereto. In his charge, the learned judge took these up seriatim, and disposed of them summarily in the passages assigned for error, as follows : " What facts are before you to show that there was any fraud in this transaction ? The mere fact that they [appellants] were not provided for would not in itself be fraud. Now, it appears that a paper was drawn up and signed by all the creditors except these particular parties. This was a perfectly legal transaction. If this transferring was not, done for the purpose of defrauding these particular creditors, it was perfectly proper." And again : " Now, the facts and circumstances related here to show fraud are, first, that they [defendants] were not thus provided for ; and, in the second place, certain declarations made by the president . . . . . in an affidavit. . . . . [The jury] must determine from the facts before them, and from all the inferences to be drawn from these facts. Because defendants may lose their claim, is not evidence that they were intended to be defrauded." This was not an adequate presentation of the case. It omits all mention of the facts that the failure to provide for defendants, to include them in the paper, or to give them no-

Opinion of the Court.

tice of the proceeding, was intentional, always a cardinal point in the proof of fraud; and it makes no reference to the removal of the Aronia company's goods without leaving enough to pay even the rent, to the fact that the transfer was made on the eve of a trial which was sure to result in a judgment in favor of appellants, and perhaps to other circumstances of suspicion. But the substantial defect of the charge is in its treatment of the items of evidence, one by one, without at any time directing the view of the jury to their united force. There probably never was a case of circumstantial evidence that could not be blown to the winds by taking up each item separately, and dismissing it with the conclusion that it does not prove the case. The cumulative force of many separate matters, each perhaps slight, as in the familiar bundle of twigs, constitutes the strength of circumstantial proof. This presentation of the case to the jury we unfortunately do not find anywhere, and, for want of it, we are obliged to sustain the third, fourth, and fifth assignments of error.

But, secondly, was this transfer fraudulent in law ? Here, again, the true point of the case has been unfortunately overlooked. The question is stated in the opinion of the court to be whether a corporation can lawfully dispose of its assets without the assent of all its creditors, there being no actual fraud intended ; and this is the question that has been argued here by appellee. But it is only half the question, and the pinch of the case lies in the omitted portion : Can the stockholders of a corporation make such a transfer *to themselves?* The Montgomery company is substantially the Aronia company under a new name. More than half its stock is held by the old stockholders by virtue of their ownership of the old stock, without any other consideration. On the view of the question that appellees assume to be contended for, they have argued that the same law as to the use of its assets to pay its debts should be applied to a corporation as to an individual, even to the extent of sanctioning preferences, and this might be conceded without really touching the case. But the illustration, if appropriate, is fatal to the appellee ; for, in the case of an individual, a transfer to his wife or his agent, or anybody who should merely represent himself under another name, would be unquestionably void against creditors. The only real diffi-

culty in the present case is whether the stockholders are so completely severed, in the view of the law, from the corporation behind which they hide, as to prevent a creditor from asserting their identity in fact, for the purpose of securing payment out of property which was theirs under one name, and is still theirs under another. Is the Montgomery company so completely a new and different person from the Aronia company that the law must close its eyes to the fact that the difference is a mere juggle of names? We do not think there is any compulsion to such legal blindness. Settled general principles, and the analogies of the law, are against such a contention. If the corporation had merely changed its name, there could have been no doubt of the continued liability of the property. As already said, a majority of the stockholders in the new company are simply the stockholders of the old company holding as such, and without other consideration. As to these, it has been a mere change of name. As to the other or new stockholders, it appears from the agreed facts that they were creditors of the old company, and hold their present stock solely in consideration of their former claims as creditors. They paid nothing else for it; and they must have known that the new corporation into which they entered in this way was not a new enterprise, in the regular course of business under the incorporation act of 1874 as it professed to be, but a new turn in the old enterprise, all of whose property was being practically handed over, not to them alone in payment, which they might, perhaps, rightfully have accepted, but to them in conjunction with their late debtors. Under such circumstances, they were bound to take notice of the nature of the transaction, and to know that equity would still regard the property as a trust for the payment of existing debts, and would follow it on behalf of creditors until it should get into the hands of innocent purchasers for value. Such purchasers they were not. The old stockholders were not purchasers for value at all; and the new stockholders were not innocent, for they knew, or were bound to take notice, of the taint in their co-adventurers' title. We are of opinion that, as to the stockholders in the Aronia company, this was a transfer of property by a debtor with the retention of an interest in himself, within the settled rule of law that makes such transfers void against creditors, and that, as

to the Aronia creditors who became new stockholders in the Montgomery company, they took with such notice as prevents them from claiming now as innocent holders for value against the appellants as execution creditors of the old corporation. It is not worth while to cite authorities for these principles. They are settled and familiar.   The only question that can be made is upon their application; and the novelty in this, if there be any, is simply the novelty of circumstances.   The only case of similar facts that has been found is Hibernia Ins. Co. v. Transportation Co., 13 Fed. R. 516; and in that the Circuit Court of the United States reaches a similar conclusion. " This court holds," says McCrary, C. J., " that the sale by the Babbage company of all its property to another corporation, composed mostly, if not wholly, of the same persons, was fraudulent and void as to all creditors of the former company not assenting thereto. . . . . The fair inference from the transaction is that the old company was about to be dissolved, and to cease to be.   It was to be absorbed by the new company. This is the inevitable consequence of the formation of the new company, composed substantially of the same persons, to transact the same business, at the same places, and with the same property.   By the transfer, the creditors of the old company were deprived of the means of enforcing their claims. . . . . Equity will not compel the creditor of a corporation to waive his right to enforce his claim against the visible and tangible property of the corporation, and to run the chances of following and recovering the value of shares of stock after they are placed on the market."   And Treat, D. J., added: " A corporation. . . . . cannot change its name, or assume the form of a new corporation, and thus escape its obligations."   The court drew a distinction between an individual and a corporation, as to parting with all its assets even for the payment of bona fide debts, and not only held the transfer void even irrespective of the identity of the stockholders, but held the new corporation liable to the creditors of the old to the extent of the assets so received.   It is not necessary for us to go so far. We only hold that, under the circumstances, specific property of the old corporation may be followed, as in other cases of transfers fraudulent as to creditors.

It is said in appellee's argument that the whole of the pro-

perty of the Aronia company was not sold. But, in fact, the portion left was not enough to pay the landlord's preferred claim for rent; and, as to this creditor the transfer was of all the available assets, and left him nothing within reach for payment of his claim.

> Judgment reversed, and now judgment for defendant on the point reserved.