CLERE CLOTHING CO. v. UNION TRUST & SAVINGS BANK.

In re PRAGER–SCHLESINGER CO.'S ESTATE

(Circuit Court of Appeals, Ninth Circuit.  July 12, 1915.)

No. 2563.

BANKRUPTCY ⊕308—CLAIMS—ALLOWANCE.

 The C. Corporation, a creditor of the P. Company, effected a compromise with other creditors of the P. Company, subjected to involuntary bankruptcy proceedings, advancing for the purpose money which it borrowed from a bank. The trustee, by order of court, made to C. Corporation a bill of sale of the merchandise, furniture, and fixtures of the P. Company. The C. Corporation took over the property, put them on sale at retail through its sales agents, and subsequently turned the same over to the P. Company as selling agent, to turn over the proceeds to the bank, to be credited on the indebtedness. The P. Company was reorganized, and of its 500 shares 498 were turned over to the president of the C. Corporation, and 1 share was given to the attorney of the C. Corporation. Subsequently the C. Corporation purported to sell the merchandise to the P. Company, and took notes therefor. There was no written evidence of the sale. An expert accountant stated that there was not any change in the ownership of the business of the P. Company, and that there were no records of any bills payable in the books that would indicate a sale. *Held*, that the P. Company from its reorganization was an agent for the C. Corporation, and on the subsequent bankruptcy of the P. Company the C. Corporation could not establish its claims based on the notes.

 [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 496–507; Dec. Dig. ⊕308.]

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank A. Rudkin, Judge.

In the matter of the estate of the Prager-Schlesinger Company, a bankrupt. Proceedings by the Clere Clothing Company against the Union Trust & Savings Bank, trustee in bankruptcy, to establish claims. From a decree rejecting the claims, the Clere Clothing Company appeals. Affirmed.

Belden & Losey, of Spokane, Wash. (Charles P. Harris, of Spokane, Wash., of counsel), for appellant.

Wakefield & Witherspoon, of Spokane, Wash., for respondent.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge.  This is an appeal from a decree of the court below, under section 25a of the Bankruptcy Act, rejecting two claims of the Clere Clothing Company, in the sums of $30,640 and

$1,610.67, respectively, against the Prager-Schlesinger Company, a corporation, bankrupt. The claim of $30,640 is founded upon a promissory note alleged to have been given to the Clere Clothing Company by the bankrupt corporation on January 25, 1913, in payment of a stock of merchandise and fixtures alleged to have been sold by the Clere Clothing Company to the bankrupt. The claim of $1,610.67 represents the alleged purchase price of certain merchandise sold to the bankrupt by the Clere Clothing Company some time subsequent to January 25, 1913.

The trustee filed a petition for the rejection of both claims, upon the ground that, while the business of the bankrupt was conducted under the name of Prager-Schlesinger Company, nevertheless the ownership, management, and control thereof rested in the Clere Clothing Company, the claimant, and that the entire capital stock of the Prager-Schlesinger Company was owned, held, and controlled by the Clere Clothing Company; that the Clere Clothing Company was liable for the debts of the Prager-Schlesinger Company while so operated and controlled, and was not entitled to participate as a creditor in the assets of the bankrupt corporation.

The referee in bankruptcy found as a fact that the Clere Clothing Company and the Prager-Schlesinger Company were one and the same, the latter being merely an adjunct or instrumentality of the former; that to allow the Clothing Company's claims would be to permit it to prove debts against itself in fraud of creditors. The claims were accordingly disallowed and rejected. Upon review by the court below the order of the referee was affirmed. Upon this appeal the only question for our determination relates to the sufficiency of the evidence to sustain the finding of the referee.

In April, 1912, the Prager-Schlesinger Company was subjected to involuntary bankruptcy proceedings in the United States District Court for the Eastern District of Washington. In that proceeding the Clere Clothing Company, a creditor, effected a composition with the other creditors, advancing for that purpose approximately $26,000, which it borrowed on its note from the National Bank of Commerce of Spokane; and the trustee thereupon, by order of the court, made to the Clothing Company a bill of sale of the merchandise, furniture, and fixtures belonging to the Prager-Schlesinger Company. The Clothing Company took over the goods and fixtures, and in May, 1912, put them on sale at retail through its sales agents, H. L. Gilmore & Co., authorizing that company to sell the goods and pay the proceeds into the National Bank of Commerce, to be applied to the loan made by that bank to the Clothing Company. The agents sold portions of the goods, paying the proceeds to the bank, until the latter part of July, 1912. During this period the Clothing Company had shipped about $21,000 worth of goods to its agents, who had also from time to time replenished the stock by small outside purchases. In the latter part of July, 1912, Gilmore & Co., under instructions from Mr. Thomas H. Clere, the president of the Clere Clothing Company, turned over the stock of merchandise to the Prager-Schlesinger Company. This delivery was likewise with the understanding that the Prager-Schlesinger Company was

to act simply as selling agent, and was to turn over the proceeds realized from sales to the National Bank of Commerce, to be credited on the indebtedness of the Clothing Company to the bank. In the same month a reorganization of the Prager-Schlesinger Company was made, wherein Louis Schlesinger was made president and manager, and H. R. Newton, one of the attorneys for the Clere Clothing Company, was made secretary. Of the 500 shares of the capital stock of the Prager-Schlesinger Company, 498 shares were turned over to Thomas H. Clere, the president of the Clothing Company, 1 share was given to Newton, and 1 share was retained by Louis Schlesinger. On July 29, 1912, there was given to the National Bank of Commerce a signature card authorizing L. A. Schlesinger to sign checks on the Clere Clothing Company account. There is also in evidence a second signature card, authorizing the payment of checks on the Clere Clothing Company account, when signed "Prager-Schlesinger Company, by L. A. Schlesinger."

The affairs of the two concerns proceeded on this basis until the 25th day of January, 1913, when the Clere Clothing Company claims to have sold outright the goods and stock of merchandise then on hand to the Prager-Schlesinger Company for the sum of $30,640, taking the note of the latter company for that amount. No written contract or other evidence of the sale was entered into. This note forms the basis of one of the claims in the present proceedings. The other claim ($1,-610.67) represents, as we have stated, the alleged purchase price of certain merchandise which, according to the testimony of Clere, was sold outright to the Prager-Schlesinger Company by the Clere Clothing Company subsequent to January 25, 1913. After these alleged sales the capital stock of the Prager-Schlesinger Company continued to remain in the names of Clere, Newton, and Schlesinger. At a special meeting of the board of trustees of the Prager-Schlesinger Company held on July 8, 1913, pursuant to notice issued at the request of Clere, and attended by Clere and Newton, a resolution was passed that the Prager-Schlesinger Company admit its insolvency and willingness to be adjudged a bankrupt. On July 15, 1913, a special meeting of the board of trustees was held, attended by Clere, Newton, and Schlesinger, at which the secretary (Newton) was authorized to consent to the appointment of a receiver. The same persons then met as stockholders and ratified the action of the board of trustees in the meetings of July 8th and 15th.

Josiah Richards, an expert accountant, who examined the books of the bankrupt company, was called as a witness by the trustee. In reply to the question whether, from his examination of the books, he could say that there was any change in the ownership of the business, or in the management at all, of the Prager-Schlesinger Company, from the first week in August, 1912, up to July, 1913, he stated as follows:

"The books indicate that there was no change during that period from June 1st to the last entry in the books in July, 1913; that is, from June 1, 1912, the accounts continued during the entire time. There are no closing entries. There was no inventory taken; there is no record of any bills payable in the books that would indicate a sale. Every account continues during this period without having been closed."

The books of the defunct company show an account running from the 9th of August, 1912, until June 2, 1913, covering monthly payments of interest on an indebtedness to the National Bank of Commerce. These payments are charged as expenses against the business. But there is nothing on the books to indicate that the Prager-Schlesinger Company was indebted to that bank. On the other hand, as we have stated, the Clere Clothing Company was indebted to that bank on the note given by it in order to effect the composition in the first bankruptcy proceeding of the Prager-Schlesinger Company. The bank account was carried in the name of the Clere Cothing Company from the time it was opened until the bankruptcy proceedings were instituted. The vice president of the bank testified with respect to this feature of the case that the reason the bank account was carried in the name of the Clere Clothing Company was because "they were the only people we were doing business with. They were the only people that we had any business with."

We are of opinion that the evidence indicates conclusively that, commencing with the reorganization of the Prager-Schlesinger Company in July, 1912, down to and including the filing of the voluntary petition in bankruptcy by that company in August, 1913, it was acting solely in the capacity of agent for the Clere Clothing Company and that the presentation for payment of the claims involved in this proceeding is a deliberate attempt on the part of the latter company to prove debts against itself in fraud of legitimate creditors of the bankrupt corporation. The fact that the two companies preserved separate entities does not detract in the slightest degree from the force of the facts adduced in the testimony and hereinabove referred to. The Clere Clothing Company and the Prager-Schlesinger Company, during the period referred to, were, as it were, one corporation. The scheme of the Clothing Company is easily discerned. It proposed to play safe, regardless of the ultimate financial condition of the Prager-Schlesinger Company. If the latter company should be successful, there can be no doubt that the profits would have gone to the Clere Clothing Company, or to the National Bank of Commerce in payment of the indebtedness of the Clothing Company. If the Prager-Schlesinger Company should fail, as it did in fact fail, the Clothing Company proposed to be in position to present and insist upon the payment of its alleged claims. Such tactics are not to be commended. A corporation may not for a period of over a year so intertwine its affairs and business transactions with a second company as to virtually create the relationship of principal and agent, and then upon the insolvency of the second company insist upon the payment of alleged debts incurred in the very transactions by which the relationship was created.

The conclusion reached is in accord with that of the Supreme Court of the state of Washington in the case of Spokane Merchants' Association v. Clere Clothing Company (decided on April 5, 1915) 147 Pac. 414. That was an action by the Spokane Merchants' Association, assignee of the Spokane Dry Goods Company, against the Clere Clothing Company, to recover a balance due on an account for goods sold by the Dry Goods Company to the Clere Clothing Company, during the

period between August 31, 1912, and June 3, 1913. The goods were purchased by Schlesinger and charged to the Clere Clothing Company. The value of the goods was $2,003.83, of which $1,498.36 had been paid on account by checks, one in the name of the Clere Clothing Company, and the other in the name of the Prager-Schlesinger Company. All of the checks were signed by Louis Schlesinger, and all were charged against the bank account of the Clere Clothing Company. It appeared from the testimony in that case that Schlesinger at first endeavored to have the goods charged to the Prager-Schlesinger Company, but, in view of the former bankruptcy of that company, the Dry Goods Company refused to sell to it. On Schlesinger's assurance that he represented the Clere Clothing Company, and that the two companies were one and the same, the Dry Goods Company finally sold the goods on the credit of the Clere Clothing Company, after inquiring at the National Bank of Commerce and learning that Schlesinger was running a checking account in the name of the Clere Clothing Company. The Clere Clothing Company resisted the action on the ground that the seller of the goods was not justified in charging the goods to it. The trial court overruled this contention, and upon appeal to the Supreme Court of the state the judgment of the court was affirmed. That court said:

"The appellant claims that it never did business in this state, other than the isolated transaction of effecting the composition with the other creditors in the first bankruptcy proceedings. This claim is untenable. That transaction was a purchase by the appellant of the bankrupt stock. This is conceded. But it is argued that the deliveries of the goods to Gilmore & Co., and subsequently to the Prager-Schlesinger Company, were consignments. In the broad, loose sense of the term, they were, but not in the sense that even a qualified title passed to the consignee. The evidence makes it too plain for argument that the delivery to Gilmore & Co. and the original delivery to the Prager-Schlesinger Company were not consignments in the ordinary commercial sense of a transmission to an independent merchant or factor for sale on commission. They were mere deliveries to the appellant's agents, to sell at retail and deposit the proceeds to the appellant's credit. The appellant financed the business in both instances and retained absolute control of the goods. The possession of the goods was at all times that of the appellant by its sales agent. The fact that the Prager-Schlesinger Company was a corporation does not alter the case. The reorganization of that company at the time of the original delivery to it of the goods was for the confessed purpose of giving the appellant an absolute control and oversight of its agent. This emphasizes the correctness of our conclusion. Clere at all times acted for and in behalf of the appellant. When he and the appellant's attorney took over, solely in consideration of the agency, practically the entire capital stock of the Prager-Schlesinger Company, that company by every just and reasonable intendment became a subsidiary corporation of the appellant. This status being once established, as it clearly was if evidence short of an admission can establish anything, it was incumbent upon the appellant to show that the Prager-Schlesinger Company was rehabilitated as an independent entity, with complete control of its own functions and destiny, at the time of the alleged sale of the goods to it on January 25, 1913. This evidence wholly fails to establish. All of the capital stock of the corporation save one share was still in effect owned and in reality controlled by the appellant, through its president and attorney, who still constituted two of the three trustees. The attorney was still retained as secretary. The appellant's bank account was still used ad libitum by the Prager-Schlesinger Company. True, the appellant's officers claim this was unauthorized and unknown to them; but it taxes credulity to assume that it knew nothing of the state of its own bank ac-

count for months, especially since it had at the situs of the whole transaction its own attorney, who was also trustee and secretary of the Prager-Schlesinger Company, confessedly so constituted for the appellant's protection. The very fact that no former bill of sale was made and no chattel mortgage taken to secure the payment of the alleged purchase price of the goods further lends strong color to the view that the Prager-Schlesinger Company was still what it had been from the date of its reorganization, a subsidiary company of the appellant. Many other circumstances in evidence point to the same conclusion. We are by no means satisfied that the trial judge erred in holding, as he evidently did hold, that the Prager-Schlesinger Company was a mere agent or instrumentality through which the appellant was transacting its own business in the city of Spokane up to the commencement of this action. * * * Courts no longer hesitate to look through forms to substance, and ignore a mere colorable corporate entity, to the end that rights of third parties shall be protected. In re Rieger, Kapner & Altmark (D. C.) 157 Fed. 609; Montgomery Web Co. v. Dienelt, 133 Pa. 585, 19 Atl. 428, 19 Am. St. Rep. 663; First National Bank of Chicago v. Trebein Co., 59 Ohio St. 316, 52 N. E. 834; Donovan v. Purtell, 216 Ill. 629, 75 N. E. 334, 1 L. R. A. (N. S.) 176."

See, also, In re Muncie Pulp Co., 139 Fed. 546, 71 C. C. A. 530; Glidden & Joy Varnish Co. v. Interstate Nat. Bank, 69 Fed. 912, 16 C. C. A. 534.

The decree of the court below is affirmed.