## McCARTHY v. LIBERTY NAT. BANK.

No. 9017—Opinion Filed Aug. 13, 1918.

Rehearing Denied Nov. 26, 1918.

(175 Pac. 940.)

**1. Banks and Banking—Commission Charged by President of Bank — Liability for Usury.**

Where the president of a bank, having full power to make loans for the bank, takes more than the legal rate of interest, the bank is liable for usury, although the president charges the excess over the legal rate as commission and retains it as his individual property.

**2. Banks and Banking—Liability—Reorganized Bank—Usury.**

Where a state bank is reincorporated as a national bank under a new name, but the personnel, officers, management, and business remain the same, the new bank is liable for usury charged and collected by the old bank.

(Syllabus by Pope, C.)

Error from District Court, Tulsa County.

Action by John S. McCarthy against the Liberty National Bank. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with instructions to enter judgment for plaintiff.

H. B. Martin, L. M. Lane, and A. F. Moss, for plaintiff in error.

Davidson & Williams, for defendant in error.

Opinion by POPE, C. John S. McCarthy, plaintiff in this action in the court below, desiring a loan of $6,000, went to the Tulsa State Bank and negotiated the loan through the medium of its president. The transaction assumed in outward form the guise of a loan of $8,000 for one year. This amount was placed to the credit of McCarthy in said bank, who immediately, as a part of the agreed transaction, paid the president of the bank, from said sum, the sum of $2,000, of which $800 was to be the interest on the loan and $1,200 commission to the president of the bank for making the loan—a consideration of 25 per cent. paid by McCarthy for the use of the money.

McCarthy paid the note in full, and thereafter demanded the payment to him of $4,-

000; his claim being that the said sum was double the amount of the usury paid.

In the verified petition in the record, one of the allegations, which are nowhere denied under oath, is that, after the giving of the notice above mentioned, McCarthy was inveigled into the private room of the bank, which had by that time changed its name to the Liberty National Bank, was locked in said room, forced by threats of being killed to sign an instrument renouncing all claim for usury, and after the delivery of said instrument was violently assaulted by one A. E. Lewis, who honors the bank by acting as its president.

Thereafter McCarthy brought this action against the Liberty National Bank to recover $4,000 usury. On the trial it was shown by uncontradicted evidence that the Tulsa State Bank had reincorporated as the Liberty National Bank; the latter bank being organized by the officers and stockholders of the former, taking over its assets, continuing its business, and being conducted by the same officers. Judgment was rendered for the bank, and McCarthy brings error. The bank sought to avoid liability under two theories. The one was that the $2,000 consideration received for the loan of $6,000 for a year was not interest; the contention being that only $800 was interest, and the remaining $1,200 a commission charged by the president in his individual capacity and retained by him as a commission for making the loan. The other theory was that the Liberty National Bank, as distinguished from the Tulsa State Bank was not liable by reason of the change of incorporation and name.

These contentions will be considered in their order.

We cannot agree with the contention of the bank that a part of the 25 per cent. charged the plaintiff for this loan was a commission going to the president of the bank and not interest. This man Lewis, president of both of the banks, or rather the one bank under both names and both corporations, had full charge of making loans for the bank. "I loan the bank's money to who I want to," he says, and that he kept the $1,200, as his commission without the knowledge or consent of the stockholders or the directors. "Certainly, I make a commission on loans every now and then; I reserve that right."

The uncontroverted testimony shows that Lewis had and exercised the right of making loans for the bank; he was clearly a general agent for that purpose. The funds of the bank were in his possession to be loaned. His official position was such that his knowledge would be the knowledge of the corporation. The authorities amply sustain the position that compensation received for a loan under such conditions cannot be called a commission, and the pains of usury thus avoided. Bean v. Rumrill, 69 Okla. 300, 172 Pac. 453; 46 L. R. A. (N. S.) 1157, note; 19 L. R. A. (N. S.) 391, note.

It may be that the man Lewis was guilty of a fraud on his bank, and was secretly appropriating part of the compensation which he received for loans without the knowledge of the stockholders and directors. If so, the bank has its remedy against Lewis; but it cannot deny that his knowledge was its knowledge, or escape liability to third persons for the acts of Lewis within the scope of his authority in doing that which it had put into his power to do. If the bank suffers a loss by reason of unauthorized charge of usury by Lewis, the bank may have a remedy against Lewis; but certainly this does not purge the transaction of usury.

Nor can the bank escape liability because it changed its name from Tulsa State Bank to the Liberty National Bank, and abandoned its state charter and continued business under a federal charter. The uncontradicted evidence is that it was composed of the same individuals, same officers, the same management, and continuing the same business at the same place. The law seems to be well settled that, where a corporation is the mere incarnation of a prior corporation, the new corporation must answer for all of the obligations of the old. 11 L. R. A. (N. S.) 1119, note; Montgomery-Web Co. v. Dienelt, 133 Pa. 585, 19 Atl. 428, 19 L. R. A. 665; Hibernia Ins. Co. v. St. L. & N. O. Transp. Co. (C. C.) 13 Fed. 516; Camden Interstate R. R. Co. v. Lee, 84 S. W. 332, 27 Ky. Law Rep. 75.

There seems to be little or no controversy about the facts in this case. We are therefore of the opinion that the case should be reversed and remanded, with instructions to the trial court to enter judgment for the plaintiff below for the $4,000 usury paid, $300 attorney's fee, and for costs.

By the Court: It is so ordered.