## STERLING INV. CO. v. HUGHES et al.

No. 11745—Opinion Filed March 29, 1921.

(Syllabus.)

**1. Trial—Demurrer to Evidence—Consideration.**

The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant.

**2. Usury—Banks and Banking—Usury in Guise of Agent's Commission—Sufficiency of Evidence.**

The record examined, and held, that the trial court committed error in sustaining a demurrer to the evidence of the defendant upon its cross-petition.

Error from District Court, Tulsa County; James I. Phelps, Assigned Judge.

Action by the First National Bank of Roff against the Sterling Investment Company on mortgage notes; M. Hughes and another being made parties defendant on motion of the investment company. Judgment for plaintiff, and the investment company brings error. Reversed and remanded.

G. C. Spillers, for plaintiff in error.

H. B. Martin and R. A. Reynolds, for defendants in error.

McNEILL, J. This action was commenced in the district court of Tulsa county by the First National Bank of Roff against the Sterling Investment Company for judgment on certain notes and to foreclose real estate mortgages given to secure the payment of said notes. Upon motion of the Sterling Investment Company, M. Hughes and Home Loan Brokerage Company were made parties defendants. The Sterling Investment Com-

pany filed an answer and cross-petition, admitting the execution of the notes, and pleaded the contracts were usurious, and sought to recover double the amount of interest paid from the First National Bank of Roff, M. Hughes, and the Home Loan & Brokerage Company. The cross-petition alleged that M. Hughes was president of the First National Bank of Roff and was also president and manager and director of the Home Loan Brokerage Company, and in the transactions was representing the First National Bank of Roff and Home Loan Brokerage Company. The substance of the cross-petition was that the brokerage company was organized for the purpose of permitting the brokerage company and the bank and Hughes to collect usury, by contending the amount paid to the brokerage company was commission and thereby evading the statute on usury. The defendants Hughes and Home Loan Brokerage Company filed an answer, and the First National Bank filed a reply to the cross-petition. Upon the trial of the case to a jury, the plaintiff introduced its evidence, consisting of the notes, mortgages, and the written appointment of the brokerage company as agent for the investment company. The defendant Sterling Investment Company introduced its evidence to support the allegations of the cross-petition, and a demurrer was interposed to the evidence offered on behalf of the Sterling Investment Company, which was sustained by the court, and the jury were instructed to return a verdict for the plaintiff. Motion for new trial was filed, and overruled, and the case is here on appeal.

For reversal, the only question presented is, Did the court err in sustaining the demurrer to the evidence offered on behalf of the Sterling Investment Company and instructing the jury to return a verdict in favor of plaintiff? The evidence upon behalf of the defendant Sterling Investment Company may be summarized as follows: The president of the Sterling Investment Company went to Hughes' office in Tulsa, to see about borrowing some money, and was advised if the security was sufficient, and if he would pay the commission and interest, the loan would be made. Hughes viewed the property, and papers were prepared for the investment company to sign, which consisted of the appointment of the Home Loan Brokerage Company as the agent of the investment company, the borrower agreeing to pay a commission of $280 to procure the loan of $1,400, and at the same time executing 20 $70 notes payable one each month for 20 months, said notes to draw interest at the rate of ten per cent. per annum after maturity, and a mortgage to secure said notes.

When the papers were accepted, Hughes paid certain claims against the property amounting to about $800, gave the investment company his check for $180, some odd dollars, and deducted the commission and interest from the loan amounting to $420, the Sterling Investment Company receiving $980 out of the $1,400 loan. The agent for the Sterling Investment Company testified that Hughes deducted $20 commission for himself, $280 commission for the loan company, and $120 interest.

There were several other transactions which occurred and several other different loans made to the Sterling Investment Company by the First National Bank of Roff; all were made through Mr. Hughes, and in each instance the investment company signed the written agreement appointing the loan company as the agent of the investment company to procure the loan, and agreeing to pay a certain commission, and Hughes would deduct the commission and interest and would deliver a check signed by himself on the First National Bank of Roff in payment of the loan. There was testimony that all the notes were kept by Mr. Hughes in Tulsa, and he advised the investment company that the notes were always in his possession at Tulsa. Hughes also received the payment on notes as they were paid. There was introduced letterheads of the First National Bank of Roff disclosing that Hughes was president of the bank. A brother of Mr. Hughes testified that he himself was president and M. Hughes was vice president of the bank, and that the bank had no interest in the notes.

The evidence also disclosed that the capital stock of the brokerage company was composed of 100 shares, and Hughes owned 97 shares of said stock. He was the only person in charge of the office at Tulsa, where all of these transactions occurred with the investment company, and attended to all the business, representing the brokerage company in securing its appointment as agent to procure the loan and accepting the notes for the bank, and examined the property for the bank, received payment for the bank, and advanced the money for and on behalf of the bank. The appointment of the brokerage company as agent, authorizing the Home Loan Brokerage Company as agent to secure the loan, contains the further provision that if the loan or any part thereof should not be paid when due and the note or any part thereof should be extended or renewed or permitted to run beyond the date of its maturity, the investment company agreed to pay the brokerage company as commission the same rate of compensation for each ex-

tension ·or renewal, for such time as the loan or any part thereof should be permitted to run beyond the date of maturity, as paid for negotiating said loan. The commission charged by the brokerage company was approximately what would amount to interest at the rate of 20 per cent. per annum, and the interest deducted was ten per· cent. per annum. There was deducted from each loan an amount equal¹⁵ to 30 per cent. per year of the amount of the loan. If the brokerage company was merely a subterfuge organized for the purpose of evading the banking laws, the amount charged was usurious.

The only question presented upon the appeal is whether the court erred in directing a verdict against the investment company upon this evidence.

The plaintiff in error admits signing the notes, and admits the amount due, unless it was entitled to recover upon its cross-petition, and, so far as this case is concerned, the Sterling Investment Company becomes the plaintiff upon the cross-petition and the demurrer to the evidence admits the truth of the facts testified to, together with all reasonable inferences and conclusions that may be reasonably drawn therefrom. Such is the holding announced by this court in a long line of decisions.

The question then presented is: Where the evidence discloses that M. Hughes, who was vice president and director of the First National Bank at Roff, and maintained and occupied an office at Tulsa, Oklahoma, and made and accepted loans in the name of said bank and in the same office maintained the office of the Home Loan Brokerage Company and when the borrower made application for a loan he required the borrower to sign an appointment of the brokerage company as agent of the borrower to procure the loan, and charged a commission for the brokerage company and collected interest on behalf of the bank, and he kept possession of the notes, received payments thereon, and all the transactions relating to the loaning of the money, both in so far as they related to the bank and in so far as they related to the brokerage company, are consummated by M. Hughes, are said facts sufficient to go to the jury upon the theory that the entire transactions shall be construed together and are usurious? The inquiry which naturally comes to one's mind is, What service was the brokerage company rendering in order to charge the 20 per cent. commission? This evidence supports the conclusion that Mr. Hughes was representing the brokerage company, and Mr. Hughes was representing the· bank; he accepted the note, he delivered the money for the bank, he collected the note for the bank. Could it be said that Mr. Hughes, as manager of the brokerage company, was entitled to charge commission to interview Mr. Hughes, an officer of the bank, for the purpose of negotiating a loan with himself?

We think the evidence presents a state of facts sufficient to submit the ·question to the jury according to the law announced in the case of Bean v. Rumrill, 69 Oklahoma, 172 Pac. 452, where this court stated as follows:

"Where a money lender engages an agent to make loans of money, and such agent procures a contract with the borrower by which the borrower agrees to pay 10 per cent. per annum interest from the time the money is lent, and in addition thereto, as a part of the same transaction, the agent requires the borrower to contract for or to pay an additional sum for the use of the money under the guise of a so-called commission," the entire contract is construed together and is usurious."

As was said by this court in the case of McCarthy v. Liberty Nat. Bank, 73 Oklahoma, 175 Pac. 940:

"Where the president of a ·bank, having full power to make loans for the bank, takes more than the legal rate of interest, the bank is liable for usury, although the president charges the excess over the legal rate as commission and retains it as his individual property."

As to what constitutes usury, see Midland Savings & Loan Co. v. Tuohy; 69 Oklahoma, 170 Pac. 244.

The defendant in error contends that the case of McCarthy v. Liberty National Bank, supra, is not applicable, for the reason the record does not disclose that Hughes was actively engaged in the bank or had authority to accept the loan, but we think this inference could be readily drawn from the evidence and the same is susceptible of this conclusion, and it was therefore a question for the jury to determine under all the facts in the case.

For the reasons stated, the judgment of the trial court is reversed, and cause remanded, with instructions to grant the Sterling Investment Company a new trial.

HARRISON, C. J., and PITCHFORD, ELTING, and NICHOLSON, JJ., concur.