**BROWN et al. v. AMERICAN NAT. BANK.**

No. 4279.

United States Court of Appeals Tenth Circuit.

June 26, 1952.

Glenn O. Young, Sapulpa, Okl. (Glenn A. Young, David Young and John W. Young, Sapulpa, Okl., on the brief), for appellants.

Joe H. Reily, Shawnee, Okl., and J. B. Dudley, Oklahoma City, Okl. (Reily, Reily & Spurr, Shawnee, Okl., and Dudley, Duvall & Dudley, Oklahoma City, Okl., on the brief), for appellee.

Before BRATTON, HUXMAN and PICKETT, Circuit Judges.

BRATTON, Circuit Judge.

Robert Brown and Violetta C. Brown, husband and wife, instituted this action against American National Bank of Shawnee, Oklahoma, to recover judgment for usurious charges upon loan transactions with the bank. For convenience, reference will be made to Robert Brown as Brown, and to American National Bank either as American National or the Bank. Inasmuch as Violetta C. Brown merely joined her husband in the execution of certain notes and mortgages but took no other part in the transactions giving rise to the litigation, no further reference will be made to her.

It was alleged in the complaint, together with an amendment thereto, that W. E. Harber was president and managing officer of American National; that he was also president and managing officer of First National Company of Seminole, Oklahoma; that Brown applied to American National for a loan in the sum of $127,750; that the Bank acting through Harber agreed to make and did make the loan; that to evidence the obligation a note was executed for the amount payable to First National Company; that First National Company, acting through Harber, endorsed such note; that American National received and accepted it as evidence of Brown's obligation to the Bank and thereupon issued to Brown its cashier's check in the sum of $125,000, and also deposited the sum of $2,750 to Brown's account in the Bank. It was further alleged that on September 30, 1947, Brown's indebtedness to American National had been reduced to $86,637.52; that such indebtedness was evidenced by the note originally for $127,750 and by two other notes previously executed, all of which bore interest at the rate of six per cent per annum; that American National, acting by and through its president, demanded, collected, and received the sum of $20,000 in addition to interest accrued and accruing on such indebtedness at the rate of six per cent per annum; that payment of such additional sum was made by a check payable to Harber, endorsed by him, and paid from funds of Brown on deposit in the Bank; that for the purpose of concealing the collection of unlawful and usurious interest from Brown a notation was entered upon the face of the check reading "All your undivided interest in the Kellyville property"; that Harber had no interest whatever in any property which Brown acquired as the result of the check; and that the Bank took and received from Brown usurious interest in excess of ten per cent per annum. By answer, American National denied the receipt of usurious interest. And it pleaded affirmatively among other things that Brown and Harber purchased a certain oil and gas leasehold estate known as the Kellyville property; that through an arrangement made by Harber, Brown borrowed $127,750 from First National Company and executed his promissory note therefor, together with a mortgage upon the property as security for the note; that Harber pledged as collateral for the note two thousand shares of stock of The Liberty National Bank of Oklahoma City which belonged to him and was of the reasonable value of $100,000; that of the proceeds of the loan made by First National Company, $125,000 was paid on the purchase price of the Kellyville property; that the balance of the proceeds of the loan was deposited in the account of Brown in American National; that by agreement of the parties, title to the property was taken in the name of Brown but that Harber owned an undivided interest therein; that Harber later sold his interest in the property to Brown for $20,000; that Brown paid the $20,000 to Harber by means of the check referred to in the complaint; that the check did not represent interest or any like charge; and that no part of the proceeds of the check was paid to American National or First National Company.

The trial was long. Much oral testimony was adduced and many writings were introduced in evidence. Every phase of a

vast array of facts and circumstances was explored in detail, the record before us containing more than five hundred and fifty printed pages. The court found all of the material issues of fact against Brown. The court found among other things that Harber was active president of American National, active president of the First National Bank of Seminole, and active president of First National Company; and that the principal place of business of First National Company was in Seminole but that it maintained an office in Shawnee. The court further found that in the years 1947 and 1948, the legal maximum loan limit of American National to Brown was $25,000; that on March 1, 1947, Brown was indebted to such bank upon a promissory note in the sum of $24,970.92, bearing interest at the rate of six per cent per annum; that during the years 1947 and 1948, the legal maximum loan limit of the First National Bank of Seminole to Brown was $15,000; that on March 1, 1947, he was indebted to that bank upon a promissory note in the sum of $6,500, bearing interest at the rate of six per cent per annum; and that each note was secured but there was little or no equity in the security. The court further found that in the latter part of February, 1947, Brown applied to The First National Bank and Trust Company of Tulsa, Oklahoma, for a loan with which to purchase the Kellyville property; that shortly after the making of such application, Brown requested Harber to assist him in expediting the loan; that Harber communicated with a representative of the bank in Tulsa and was advised that the application had been rejected; and that he passed the information on to Brown. The court further found that shortly after the rejection of such application, Brown and Harber entered into an oral agreement under the terms of which Harber was to negotiate for Brown a loan from First National Company in the sum of $127,750 for the purpose of acquiring the Kellyville property; that title to the property was to be taken in the name of Brown; that the loan was to be secured by a mortgage upon the property executed by Brown and was to be collateralized by Harber; and

that Harber was to become associated with Brown as a silent partner in the ownership of the property with an undetermined interest of not more than fifty per cent. The court further found that Brown and Harber, as associates, purchased the property for the sum of $150,000; that pursuant to an arrangement made by Harber, First National Company made the loan of $127,750; that Brown executed the note and mortgage; that First National Company drew three checks on its account in the First National Bank of Seminole, one for $125,000, one for $2,500, and one for $250; that all of such checks were payable to Brown and were paid in due course; that Brown endorsed the check for $125,000 and purchased from American National a cashier's check payable to himself, T. J. Green, and Rosa B. Wright Rettenmeyer for $125,000, the full amount of which applied on the purchase price of the Kellyville property; that Brown also executed as a part of the purchase price a note payable to T. J. Green in the sum of $25,000 together with a second mortgage on the Kellyville property to secure it; and that title to the property was taken in the name of Brown, in accordance with the agreement between Brown and Harber. The court further found that simultaneously with the execution of the note of $127,750 payable to First National Company, Harber pledged as collateral therefor two thousand shares of capital stock of The Liberty National Bank of Oklahoma City which belonged to him and was of the reasonable value of $100,000; that the loan could not have been consummated without the execution and delivery of such collateral agreement; that in connection with the consummation of the loan, First National Company executed and delivered its note for $125,000 payable to The Liberty National Bank of Oklahoma City; that the note was attached to a draft for the amount drawn on The Liberty National Bank which was paid; that the full amount of the proceeds of the note was deposited to the credit of First National Company in its account with the First National Bank of Seminole; and that the note of Brown and the mortgage securing it were assigned to

The Liberty National Bank. The court further found that after Brown acquired the Kellyville property for the use and benefit of himself and Harber, Harber sold his interest therein to Brown for $20,000; that the check referred to in the complaint was given in payment of such interest; and that no interest in excess of six per cent was paid by Brown upon his indebtedness to American National, First National Bank of Seminole, First National Company, or Harber. Judgment was entered against Brown, and he appealed.

Error is assigned upon the finding and conclusion of the court that no interest in excess of six per cent per annum was paid by Brown to The First National Bank of Seminole, First National Company, or Harber. The argument in support of the contention is that the finding and conclusion were outside the issues in the case and in excess of the jurisdiction of the court; that such bank, such company, and such individual were not parties to the action; and that a court may not enter judgment against one not a party to the action. It is a familiar rule of frequent enunciation that judgment may not be entered with binding effect against one not actually or constructively before the court. Mallow v. Hinde, 12 Wheat. 193, 6 L.Ed. 599; Michoud v. Girod, 4 How. 503, 562, 11 L.Ed. 1076; Shields v. Barrow, 17 How. 129, 130, 141, 15 L.Ed. 158; Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; Bogart v. Southern Pacific Co., 228 U.S. 137, 33 S.Ct. 497, 57 L.Ed. 768; United States v. Bean, 8 Cir., 253 F. 1; Ducker v. Butler, 70 App.D.C. 103, 104 F.2d 236; Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971. But the judgment entered in this cause was not for or against The First National Bank of Seminole, First National Company, or Harber. It was completely silent in respect to them. No adjudication was made either in their favor or adverse to them. The judgment merely adjudicated that Brown take nothing as against American National, and that the latter recover its costs. And while the finding and conclusion that Brown did not pay to American National interest in excess of six per cent

per annum, if sustained by substantial evidence, constituted an adequate basis for the judgment, the finding and conclusion that no such interest was paid to the other parties mentioned does not warrant disturbance of the judgment on appeal.

The finding of the court that the check in the sum of $20,000 which Brown delivered to Harber was not in payment of a charge by American National for the use of money or the extension of credit and the further finding that such check was given in payment of the purchase of Harber's interest in the Kellyville property are challenged on the ground that they are not supported by competent evidence, are contrary to the evidence, and are contrary to law. In the trial of a case without a jury, it is the province and function of the trial court to observe the witnesses while testifying, to judge their qualifications, to appraise their credibility, to determine the weight to be given to their testimony, to draw inferences from the facts established, and to resolve conflicts in the evidence. And a finding of fact made by the trial court will not be disturbed on appeal unless it is clearly erroneous. Shoemaker v. Leeper, 10 Cir., 186 F.2d 372; American Home Fire Assurance Company of New York v. Mid-West Enterprise Co., 10 Cir., 189 F.2d 528; Carter Oil Co. v. McCasland, 10 Cir., 190 F.2d 887, certiorari denied, 342 U.S. 870, 72 S.Ct. 113. It would serve no useful purpose to detail the evidence at length. It is enough to say that a painstaking review of the entire record convinces us that the evidence and the inferences fairly to be drawn from it were sufficient to support the findings of fact presently challenged; that such findings are not plainly erroneous; and that therefore they must stand on appeal.

It is urged that a sham and device to conceal usury are not favored; that an excessive charge collected as a share in earnings rather than interest renders a transaction usurious; that payment of usury in property rather than in money is no defense; that the use of an agency device to conceal usury is no shield; that an agreement to pay usury need not be made simultaneously with the agreement to lend money;

 

that the substance of a transaction rather than its form determines whether it constitutes the payment of usury; and that a bank is liable if usury is collected by its president. Many cases are cited in support of the several propositions of law thus presented. But it is unnecessary to explore the questions. The court expressly found in the clearest terms that the $20,000 payment which Brown paid to Harber was for the purchase of Harber's interest in the Kellyville property. Being in payment of that interest, it was not a sham or device to conceal usury; was not an excessive charge collected as a share in earnings; was not the payment of usury in property rather than money; was not the use of an agency device to conceal usury; was not an agreement to pay usury made at a different time from the agreement to lend money; and was not a transaction in which the president of the bank collected usury.

The judgment is challenged on the ground that even though Harber secured an interest in the Kellyville property, it belonged to American National and constituted usury. The generally accepted definition of usury is the taking of a greater premium for the use of money loaned than the law allows. Midland Savings & Loan Co. v. Tuohy, 69 Okl. 270, 170 P. 244. And as we understand the law of Oklahoma, where the president of a bank with power to make loans for the bank takes more than the legal rate of interest, the bank is liable for usury even though the president charges the excess as a commission or other like exaction and retains it as his individual property. McCarthy v. Liberty National Bank, 73 Okl. 275, 175 P. 940, 7 A.L.R. 137; Sterling Investment Co. v. Hughes, 81 Okl. 79, 196 P. 933. But no situation of that kind was presented here. American National did not make the loan to Brown. First National Company made it. And under the findings of the court, Harber did not collect the $20,000 as interest, commission, or other like exaction. The sum was paid to him as the purchase price for his interest in the Kellyville property.

The further contention advanced for reversal of the judgment is that the parol agreement between Brown and Harber, alleged by American National and denied by Brown, failed to establish either a partnership or an interest in the real estate; and that the alleged interest of Harber in the property was void for uncertainty. No issue of that kind was tendered on the face of the pleadings, and the record fails to indicate that such an issue was presented to the trial court. American National pleaded the agreement and Brown denied that he and Harber ever entered into an agreement of that kind. No one pleaded the invalidity of the agreement. Counsel for Brown stated categorically at the pretrial conference that the only issue in the case was whether payment of the $20,000 represented usurious interest for which American National was liable, and the case was tried accordingly. Although we express no opinion respecting the matter, conceding without so deciding that as between Brown and Harber the agreement was infirm and voidable, obviously that could not render American National liable for the receipt of usurious interest.

The judgment is affirmed.