McQueen and Another *v.* The State Bank of Indiana.

Nov. Term, 1850.

McQueen
v.
State Bank
of Indiana.

2 413
124 588

2 413
145 100

2c 413
163 581

An action for money had and received will lie where one man has obtained money from another through the medium of oppression, imposition, extortion, or deceit; and the law implies a promise from such person to return it to the lawful owner whose title to it cannot be annulled by the fraudulent and unjust dispossession.

Such action will lie where money has been received by mistake of facts, or without consideration, or upon a consideration that has failed, or where money has been received under a special contract that has been rescinded.

The defendants sold to the plaintiff several bills of exchange drawn on a broker in *New York.* The bills were accepted, but the sale was made by fraudulent representation, and both the defendants and broker were destitute of property. Suit was brought a few days before the bills were payable. *Held,* that as the money sued for had been obtained by fraud, the plaintiff had a right to consider the contract a nullity.

ERROR to the *Allen* Circuit Court.

Tuesday, January 7, 1851.

BLACKFORD, J.—The *State Bank of Indiana* brought an action of assumpsit, for money had and received, against *McQueen* and *McKay.* The suit was commenced by a writ of foreign attachment issued on the 27th of *April,* 1844. The defendants pleaded the general issue. Verdict and judgment for the plaintiff.

The facts necessary to be noticed are as follow:

About the 20th of *March,* 1844, the defendants, resident at *Detroit,* in *Michigan,* offered, by their agent, to sell the said bank at *Indianapolis* certain bills of exchange. The bills were dated at *Detroit,* the 28th of *February,* 1844, and were drawn by the defendants on one *James Hoyland,* No. 8, *Wall* street, *New York.* They were payable thirty days after sight, and were each for the payment of 1,000 dollars. When this offer was made, the agent handed to the bank a letter from a third person, representing the defendants as of the highest respectability. He (said agent) showed to the bank letters of said *Hoyland* to the defendants, authorizing the drawing of said bills, and saying they would be duly accepted and paid. The said agent also stated to the bank that *Hoyland* was a man of high character, and made various other statements to the bank calculated to show that the

bills were good. None of the directors or officers of the bank had any acquaintance with the defendants or with *Hoyland;* but, in consequence of said representations, the bank purchased from the defendants twelve of said bills, and paid the agent the full amount for them, less the interest for forty days.

There were two witnesses examined respecting the payment for the bills, namely, the cashier of the bank, and said agent of the defendants. The cashier says the bills were paid for in notes of the bank, which circulated and passed as money. The agent, in speaking of the amount received from the bank for the bills, always uses the term money or dollars.

A considerable part of the money thus obtained from the bank, was laid out by said agent in the purchase of pork and flour, by the direction and in the name of the defendants. The residue of the money, after deducting travelling expenses, &c., was paid over by the agent to the defendants.

The bills so purchased by the bank (and which she produced on the trial) were presented to and accepted by *Hoyland,* in *New York,* on the 1st of *April,* 1844. But when the bills fell due, namely, on the 4th of *May,* 1844, *Hoyland* was not to be found, and the bills were protested for non-payment.

It is very clear, from the evidence in the record, that the defendants procured said money from the bank by a gross fraud. The most of the representations made by the defendants, through their agent, to the bank to obtain said money, and by which representations it was obtained, were utterly false. The defendants and *Hoyland* were men destitute of property; and the bills of exchange were entirely worthless.

We are of opinion that, according to the evidence in this case, the action was rightly sustained.

The bank notes paid for the bills of exchange were treated by the parties as money, and are expressly called money by the defendants' agent who received them. They may, therefore, as respects this suit, be considered

as money. *Pickard* v. *Bankers*, 13 East, 20.—*Mason* v. *Waite*, 17 Mass. 560.

The circumstance that the suit was brought a few days before the bills were payable is not material. The money sued for had been obtained by fraud, and the bank, therefore, had a right to consider the contract relative to the bills as a nullity. The following are some of the cases in which the action for money had and received lies: If one man has obtained money from another through the medium of oppression, imposition, extortion, or deceit, such money is, in contemplation of law, money received for the use of the injured party. It is not the money of the wrong-doer, he has no right to retain it; and the law therefore implies a promise from him to return it to the lawful owner, whose title to it cannot be destroyed or annulled by the fraudulent and unjust dispossession. 1 Add. on Cont. 232. So, where money has been received by mistake of facts, or without consideration, or upon a consideration that has failed, it may be recovered back. So, money received under a special contract that has been rescinded, may be recovered in an action for money had and received. Id. 231 to 235.

In the case before us, the bills of exchange were of no value, and the sale of them was effected by fraud. The bank, therefore, had a right to treat the sale as void, and recover back, in this action, the money paid. This doctrine is recognized in the case of *Campbell* v. *Fleming*, 1 Adol. & Ell. 40. There the plaintiff, in consequence of various representations, purchased some shares in a mining company. He afterwards discovered that the whole scheme was a deception, and sued for money had and received to recover back the money paid for the shares. It appeared, however, on the trial, that the plaintiff, after discovering the fraud, had formed a new company by consolidating said shares with some other property, and sold shares in the new company. The plaintiff failed, but the opinions of the judges show that he would have succeeded, had it not been for the transactions subsequent to the discovery of the fraud. *Parke,*

Nov. Term,
1850.

J., said: "After the plaintiff, knowing of the fraud, had elected to treat the transaction as a contract, he had lost his right of rescinding it; and the fraud could do no more than entitle him to rescind." *Patteson*, J., said: "No contract can arise out of a fraud; and an action brought upon a supposed contract, which is shown to have arisen from fraud, may be resisted. In this case the plaintiff has paid the money, and now demands it back, on the ground of the money having been paid on a void transaction. To entitle him to do so he should, at the time of discovering the fraud, have elected to repudiate the whole transaction."

The bank, in the present case, on discovering the fraud, at once repudiated the transaction, and sued for the money paid. That, we have no doubt, she had a right to do. The defendants' objection to the suit, on the ground that the bills were not due, is not tenable. The transaction being fraudulent, the plaintiff could treat it as void as well before as after the bills became due, and sue for the money paid on such transaction, the consideration for the payment having entirely failed.

*Per Curiam.*—The judgment is affirmed with costs.

*Z. Baird*, for the plaintiffs.

*J. Morrison* and *S. A. Major*, for the defendant.