## Joseph T. Donovan

*v.*

## Julia Purtell.

*Opinion filed October 24, 1905.*

1. TRIAL—*when refusal to direct verdict for defendant in assumpsit is proper.* Refusal to direct a verdict for the defendant in an action of assumpsit is proper, where the evidence tends to show that the defendant received the plaintiff's money and used it for his private purposes, although he sought to cover up the transaction by delivering to the plaintiff worthless securities in the name of a corporation entirely under his own control and organized for the transaction of his own private business.

2. CORPORATIONS—*when officer of a corporation is personally liable for loss.* An officer of a corporation who transfers worthless securities of the corporation for money which he receives and uses for his own private purposes, using the name of the corporation to cloak his own fraudulent transaction, is personally liable for the loss thereby occasioned to the creditor.

3. EVIDENCE—*when proof of promise to pay is competent.* Proof of an oral promise by an officer of a corporation to pay a debt evidenced by worthless securities of the corporation is not incompetent, as being a verbal promise to pay a debt of a third person, where the evidence tends to show that the promisor was using the corporate entity for the transaction of his own private business and received and used the money for which he gave the securities.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding.

This is an action in assumpsit, begun by appellee against appellant on November 24, 1903, by attachment in the circuit court of St. Clair county. The writ of attachment was levied on appellant's interest in certain land situated in that county. Before the trial, to-wit, on March 23, 1904, by agreement of the parties an order was entered, releasing the real estate, levied upon under the writ of attachment, upon the execution and filing by appellant of an indemnity bond. The declaration consists of the common counts for money lent by appellee to defendant at his request; for money paid out and expended by appellee for the use of appellant at his request; for money received by appellant for the use of appellee; for money for interest on divers sums of money forborne by appellee to appellant at his request, etc. A bill of particulars was filed, which, besides the items for money loaned and due in 1901, contains items for money lent by appellee to appellant in the name of the Fidelity Realty Company in 1901; and for money lent to appellant by appellee and promised to be paid by him in the name of the J. T. Donovan Real Estate Company in 1901. The general issue was filed to the decla-

ration.   A trial was had before the court and jury, resulting
in a verdict in favor of appellee against appellant for the sum
of $1430.00, from which the plaintiff remitted the sum of
$71.80, making the amount of the verdict $1358.20, which
*remittitur* was approved by the court.   Motion for new trial
was overruled and judgment rendered on the verdict in favor
of appellee against appellant for $1358.20 and costs.   An
appeal was taken to the Appellate Court where the judgment
has been affirmed.   The present appeal is prosecuted from
such judgment of affirmance.

Upon the trial of the cause, at the close of the evidence
of appellee, plaintiff below, plaintiff's counsel tendered to the
defendant the notes and trust deed, dated January 19, 1901,
hereinafter referred to, and also the written guaranty here-
inafter described, which counsel for the defendant refused to
accept.   The notes, trust deed and guaranty were then ten-
dered into the care of the court for the use of the appellant,
the defendant below.

At the close of the appellee's evidence the appellant asked
the court to give a written instruction to the jury to find the
issues for the defendant below, which instruction the court
refused, and such refusal was excepted to.   At the close of
all the evidence the defendant below again asked of the
court a written instruction to the jury to find the issues for
the defendant, which instruction was refused, and such re-
fusal was excepted to.

The facts of this case as stated by the Appellate Court
in their opinion are as follows:

"Appellee for many years worked for her living in St.
Louis, Missouri, doing housework.   Some time prior to this
suit, having accumulated the sum of $1200.00, she placed
it at interest on real estate security, and the note represent-
ing the loan came due in January, 1901.   At that time ap-
pellant was engaged in the real estate and loan business in
the city of St. Louis.   He was president of the J. T. Dono-
van Real Estate Company, of which his son, Joseph M.

Donovan, was vice-president. The latter was also president of the Fidelity Realty Company, which did business in the same room with the other company, and in which appellant was likewise interested. Shortly after her note became due, appellee took it, and the trust deed by which it was secured, to appellant's place of business, for the purpose of having him collect the money due and re-invest it for her, but at the office she made arrangements to that end with Joseph M. Donovan, whom, she testified, she considered a clerk. In June, 1901, she left the city and did not return until the following October. In the meantime she made arrangements with a friend, Miss Slaterly, to attend to her business. During her absence the note owned by her was collected, and a new one for a like amount secuured by deed of trust, was given Miss Slaterly, who afterwards turned the papers over to appellee. The new note was made by the Fidelity Realty Company, by J. M. Donovan, its president, and was payable to the order of George M. Cooper, a clerk in appellant's office, who endorsed the same without recourse. It was secured by a deed of trust upon a 25-foot lot on SanFrancisco avenue in the city of St. Louis, made by the Fidelity Realty Company to appellant, as trustee. The note and trust deed were dated January 19, 1901, but were not delivered to Miss Slaterly until the following August. With these papers there was also delivered to Miss Slaterly a written guaranty, executed by J. T. Donovan Real Estate Company, by J. T. Donovan, its president, which, after reciting the assignment to appellee of the note and securities in question, proceeded as follows: 'And whereas, there is being erected on said lot of ground, certain improvements, which may not yet be fully completed and paid for; now, therefore, in consideration of said sum of $1200.00, we hereby promise and agree to cause said improvements to be fully completed and paid for, and to hold the said Miss Julia Purtell harmless from all loss or damage on account of mechanics' liens, or on account of the failure of the said Fidelity Realty Company to

fully complete said improvements, and to pay for the same. For the consideration aforesaid, we further obligate ourselves to hold Miss Julia Purtell and her assigns harmless from all loss on account of said investment, principal or interest.' The guaranty also contains an undertaking on the part of the maker to pay the interest notes in case of default in the payment thereof for a longer period than thirty days, and to purchase the principal at its face value, with interest added, within six months after default in the payment of the same.

"Some time after appellee received the last named papers she ascertained that the lot described in the deed of trust was vacant; that no improvements were being made, and that it was worth only about $150.00. She thereupon called upon J. M. Donovan, the president of the Fidelity Realty Company, who offered to give her in exchange other securities, which, on examination, she found to be entirely inadequate to properly secure the debt. She then made a similar demand of appellant and he offered her to substitute some other piece of property for that which appellee had, but, upon an examination of the properties named, appellee refused to accept any of them on the ground that the security was wholly insufficient. While negotiations were pending, two of the interest notes were paid by appellant. Appellee testified that, when she asked appellant what security he could give on said notes, he said he could not give her money, but offered to pay her in eighteen months and told her she would not be at any loss, but this appellant denies. Afterwards negotiations ceased, and this suit was brought.

"Upon the trial the appellant * * * introduced the evidence of himself and Joseph M. Donovan. * * * These witnesses were corroborated to some extent by the securities held by appellee, purporting to have been executed by the two corporations above named. On the contrary, appellee * * * testified that she dealt with appellant on account of the confidence she had in him; that his boys, several of

whom were in the office, acted just as other clerks; she said, 'I paid all the confidence to Mr. Donovan I could. I would not pay as much to my brothers as I paid to Mr. Donovan, because he was a Catholic and a member of my church and a good living man, as I supposed.' The manner of transacting business at the Donovan office was fully explained by Lydia M. Cooper, who was appellant's stenographer and typewriter from October, 1897, to April, 1903. She testified that the office was a long, narrow room about twenty feet wide and sixty to seventy-five feet long; that there was a partition in the front like a banking counter, and in the rear there was a place about ten feet square, where a number of different companies, known as the J. T. Donovan Real Estate Company, the Fidelity Realty Company, the Cunliff Realty Company, the Fenimore Realty Company, the Cappa Realty Company and the McKinley Company had headquarters; that the different corporations had different presidents, but that appellant was really the man, who ran the whole thing; that there were three sons of appellant in the office, and several other clerks; that J. T. Donovan controlled the business of the Fidelity Realty Company; that there was a book-keeper and cashier in the office; that over the door there was the sign, 'J. T. Donovan Real Estate Company;' that J. M. Donovan 'never made any transaction without J. T. Donovan sanctioned it;' that the Fidelity Realty Company did not have any financial standing, but was simply gotten up to keep the property out of judgment, so that the property could be sold and transferred without the judgment being paid off; that she had heard appellant say so himself; that 'he said there were judgments against these different companies, and he would get up another company and put the property in the name of the new company, in order that it could be transferred, so that there would be no judgment against it;' that he used the property of the companies indiscriminately; that he would settle the debts of the J. T. Donovan Real Estate Company with those prop-

erties, no matter to which company they belonged; that the stock of the J. T. Donovan Real Estate Company was all held by members of the family; that Mr. Donovan got the property named in the deed of trust in question for $325.00, and put a $1200.00 loan on it.

"Joseph M. Donovan, when placed upon the witness stand, denied some of the statements made by Miss Cooper, but appellant, when placed upon the stand, did not see fit to deny any of them."

LOUDEN & CROW, for appellant.  .

JAMES M. DILL, and W. F. SMITH, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The salient facts of this case are, that the appellee had a note and trust deed for $1200.00 against a man named Hayden; that they became due in January, 1901, and she took them to the office of the appellant with directions to him, or to his son in the same office with him, to collect them for her, and re-invest the money; that the money was collected by appellant, or some one of his sons in the office with him, either in his own name, or in the name of one of the corporations doing business in his office, and which he controlled and managed. The evidence tends to show that the $1200.00, belonging to appellee, went into appellant's hands, or into the hands of some one or more of his sons or clerks. Appellee's money, therefore, was had and received by the appellant.

Appellant turned over to Miss Slaterly, appellee's agent and friend acting for her while she was out of the city, a note for $1200.00 payable in three years, together with certain interest notes, and a trust deed securing the same upon a 25-foot lot in St. Louis. These notes and trust deed bore date January 19, 1901. The evidence tends strongly to show that at that time the lot was not worth more than from

$125.00 to $150.00, or from $5.00 to $6.00 per front foot. The principal note for $1200.00, and the interest notes, dated January 19, 1901, were signed by the Fidelity Realty Company by J. M. Donovan, president. They were payable to the order of George N. Cooper, a clerk in appellant's office, who endorsed them without recourse. The trust deed securing them was made to appellant, as trustee. The evidence tends to show that appellant controlled and managed the Fidelity Realty Company, and the trust deed being made to himself as trustee, and the notes being made to the order of his clerk, the conclusion is almost irresistible, in the light of the facts set forth in the statement preceding this opinion, that the papers thus prepared were really the papers of the appellant, though nominally those of a corporation in his office and under his control.

The written deed of guaranty, dated January 22, 1901, was signed by the J. T. Donovan Real Estate Company, by J. T. Donovan, president. It begins as follows: "Witnesseth, that for and in consideration of the sum of $1200.00, paid to us by Miss Julia Purtell, we have assigned and transferred to her certain notes of Fidelity Realty Company, dated January 19, 1901, secured by a deed of trust," etc. Appellant signed this indenture, and in it recites that the sum of $1200.00, belonging to Miss Purtell, was paid to "us," meaning thereby the J. T. Donovan Real Estate Company, of which he was president. In this guaranty he also recites that "we have assigned and transferred to her certain notes," etc. The notes were endorsed without recourse by his clerk, Cooper, but in view of the recital thus quoted, Cooper merely acted for the appellant or his company, the J. T. Donovan Real Estate Company. Miss Cooper swears that she drew all the deeds of trust and notes and guaranties that were executed while she was in appellant's employment from October 15, 1897, to April 7, 1903. She also swears that she drew up these notes and trust deed and the deed of guaranty, and that they were in her handwriting. She says that she drew

them up at the direction of the appellant; that is to say, the
appellant directed her to draw the notes to be signed by the
Fidelity Realty Company, payable to the order of his clerk
Cooper, and also the trust deed to be executed to himself,
as trustee. She says that she did not deliver those papers,
but merely turned them over to be signed. It is quite evident
that these notes and this trust deed represented no consid-
eration whatever. That is to say, there was no note for
$1200.00, owned by Cooper, but the notes and the trust deed
were merely drawn up to be given to appellee in return for
her $1200.00. The transaction did not by any means repre-
sent a purchase of securities, amounting to $1200.00 from
Cooper, the payee in the note. The fact, that they were
drawn up by Miss Cooper under the direction of the appel-
lant, and at his dictation, shows that the transaction was
under his control and management.

The written guaranty stated that certain improvements
were then in course of erection upon the property, described
in the trust deed of January 19, 1901, but the proof shows
conclusively that this statement was false. No improvements
were then in course of erection upon the premises, nor were
any ever made upon the premises. The evidence also tends
to show that there were judgments then existing against the
Fidelity Realty Company, and that it had no financial stand-
ing whatever; but that it was, as is said by one of the wit-
nesses, "gotten up to keep the property out of judgment."
The proof shows that none of these corporations, controlled
by appellant, paid their debts. One of the witnesses swears
that "when any adjustment was to be made, Mr. Donovan
would use the property of any of these companies to make
it, indiscriminately; he would settle the debts of the J. T.
Donovan Real Estate Company with these properties, no
matter to which company it (they) belonged."

When the appellee discovered that the notes and trust
deed, which had been turned over to her, were worthless, the
appellant began to offer her other property in place of that

described in the trust deed, and promised that he would pay
her in eighteen months, and told her that she should lose
nothing. If the debt was not his, but was really and *bona
fide* the debt of the Fidelity Realty Company, it is difficult
to understand why he should thus seek to substitute other
securities for those held by the appellee, and promise to pay
the indebtedness himself. The promise to pay the indebted-
ness was made as though the debt was his own, and not as
though it was the indebtedness of a third person, to-wit, the
Fidelity Realty Company.

The evidence tends to show that, although the appellant
and his sons turned over to appellee these worthless securities
in exchange for her money, yet that appellant himself re-
ceived the money, and used it for his own private purposes,
and sought to escape personal liability by covering up the
transaction in the name of a corporation, which was entirely
under his own control. This being so, the trial court commit-
ted no error in refusing to instruct the jury to find the issues
for the defendant. It would have been improper to give
such instruction, in view of the fact that the evidence tended
to prove that the appellant received the money, and declined
to pay it over.

This suit is not brought upon the notes, executed by the
Fidelity Realty Company. Those notes and the trust deed
securing them were tendered back to the appellant upon the
trial, and, upon his refusal to receive them, placed in the cus-
tody of the court· for the use and benefit of appellant. The
object of the suit is to recover, under the common counts,
the money actually received by the appellant.

The instructions, given by the court to the jury on behalf
of the appellee, submitted to the jury the question of fact,
whether the affairs of the J. T. Donovan Real Estate Com-
pany and the Fidelity Realty Company were controlled by
J. T. Donovan for the transaction of his private business,
and whether or not he personally controlled both of these
corporations when they received the appellee's money, and

whether or not her money was received for appellant's own private individual uses and purposes. The instructions also left it to the jury to find, whether or not the appellant was conducting his business in the name of the J. T. Donovan Real Estate Company, and, through that company, received appellee's money and appropriated the same to his own use and gave her, in payment of it, the worthless securities above referred to. The judgments of the lower courts, finding for the appellee, settle these questions of fact, so far as we are concerned, against the appellant.

Appellant was president of the J. T. Donovan Real Estate Company, and his son, Joseph M. Donovan, was the vice-president of that company, and Joseph M. Donovan, the appellant's son, was the president of the Fidelity Realty Company. Both of these concerns were controlled, managed and dominated by the appellant, J. T. Donovan. The officer or controlling manager of a corporation cannot use it, and its name, for the transaction of his own private business, and to escape personal liability on his part. The theory, upon which the appellant defends this suit, is that the liability to appellee was not his liability, but that of the corporation, known as the Fidelity Realty Company.

In *Hoffman* v. *Reichert,* 147 Ill. 274, it was held that the directors of a private corporation have no right under any circumstances to use their official position for their own individual benefit.

In the case of *Bank* v. *Trebein Co.* 59 Ohio St. 316, it was said: "The fiction, by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application, as frequently to induce the belief that it must be universal, and be, in all cases adhered to, although the greatest frauds may thereby be perpetrated under the fiction as a shield. But modern cases, sustained by the best text writers, confine the fiction to the purposes for which it was adopted—convenience in the trans-

action of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it has been insisted on as a protection to fraud, or any other illegal transaction."

In Cook on Corporations (5th ed. sec. 663), it is said: "A corporation is often organized to act as a 'cloak' for frauds. Such cases as these are becoming common, and the courts are becoming more and more inclined to ignore the corporate existence, when necessary, in order to circumvent the fraud." (See also *Lachman* v. *Martin,* 139 Ill. 450). In Morse on Banks and Banking, (vol. 1—4th ed.—sec. 128) it is said: "If bank directors do not manage the affairs and business of the bank according to the directions of the charter and in good faith, they will be liable to make good all losses, which their misconduct may inflict upon either stockholders or creditors, or both. * * * They may be held to account to an injured party in a court of chancery, or they, or any of their number, who shared in the wrongdoing, may be sued at law for damages." So, in the case at bar, appellant, as an officer of one or more of the corporations here involved, was guilty of such a fraud in transferring to appellee these worthless securities in payment of the money which he owed her, that he can be held liable personally for the loss inflicted upon her.

Even if the corporation be regarded as the real debtor, and the appellant as only its agent, yet inasmuch as he was guilty of the fraud perpetrated upon appellee, the law will hold him liable. In 1 American and English Encyclopedia of Law (2d ed. p. 1135,) it is said: "An agent will be held personally liable to third persons for all damages, sustained by them in consequence of any fraudulent or malicious acts committed by him on behalf of his principal, and, in an action against the agent for fraud, the fact, that he derived no personal profit or benefit therefrom, is immaterial." In *Reed* v. *Peterson,* 91 Ill. 288, it is said: "In an action at

law for damages, the fact, that a defendant acted throughout in the capacity of agent, in a fraud perpetrated by him, will afford him no excuse." (See also *Seddon v. Connell,* 10 Simons, 86; *Windram v. French,* 151 Mass. 549).

It is claimed, on the part of the appellant, that the court below erred in permitting appellee to prove that the appellant promised to repay the money to her. It is said that this was a promise to pay the debt of a third person, to-wit: of the Fidelity Realty Company, and that, under the Statute of Frauds, the promise to pay the debt of a third person must be in writing. The statute of the State of Missouri in relation to the Statute of Frauds upon this subject, which is almost identical with our own, was introduced in evidence over the objection of appellee. It was not pleaded as a defense; and the general rule is that, where the statute of another State is relied upon as a defense, it must be pleaded as set out, at least in substance, and must be proved on the trial, and, if it is not pleaded, it is error to permit it to be proved. (*Palmer v. Marshall,* 60 Ill. 289). But whether or not this rule applies here, where the declaration contained merely the common counts, and did not set up any contract, makes no difference under the circumstances of this case, because the proof tends to show that, when appellant received appellee's money, he was not conducting business under a *bona fide* corporate organization, but was using a corporate entity for the transaction of his private business, and, as he was, therefore, personally liable to the appellee for the re-payment of her money, his promise was to pay his own debt, and not the debt of a third person.

It is said that the court erred in the admission of certain testimony, introduced by the appellee. We are satisfied with the following statement upon this subject, made by the Appellate Court in their opinion deciding this case, to-wit: "Appellant also claims that the court erred in permitting appellee to show the course of business pursued by him, his exercise of control over the various companies in the same

office, and the indiscriminate manner, in which he used the money of said companies, and in admitting evidence, tending to show the reason why appellee had special confidence in him. In our opinion, this evidence was all proper, as bearing upon the question whether the appellant was really conducting his own business under the name of the several corporations for his own benefit, and also whether he took advantage of appellee's special confidence in him to use her money, and give her securities, which were practically worthless."

The objection is made that a recovery cannot be had in this kind of case under the common counts. We are unable to concur in this contention. In *Wilson* v. *Turner,* 164 Ill. 398, this court said (p. 403) : "An action for money had and received will lie whenever one person has received money which, in justice, belongs to another, and which, in justice and right, should be returned. * * * When, therefore, according to this rule, one person obtains the money of another which it is inequitable or unjust for him to retain, the person entitled to it may maintain an action for money had and received for its recovery." Inasmuch as, in the case at bar, there was evidence, tending to show that appellant had obtained money from appellee, which it was unjust and inequitable for him to retain, she is entitled to maintain the present action for the recovery of such money.

In *First Nat. Bank* v. *Gatton,* 172 Ill. 625, this court said, quoting from other cases therein referred to (p. 627) : "It is the well recognized doctrine that the action for money had and received may be maintained, whenever the defendant has obtained money of the plaintiff, which, in equity and conscience, he has no right to retain. * * * When money has been thus received, the law implies a promise to pay, notwithstanding there was no privity between the parties. * * *. In an action of assumpsit for money had and received, the main inquiry is, whether the defendant holds money which, *ex æquo et bono,* belongs to the plaintiff." (See also *Belden*

v. *Perkins,* 78 Ill. 449; *Allen* v. *Stenger,* 74 id. 119; *See-berger* v. *McCormick,* 178 id. 404). In *City of Elgin* v. *Joslyn,* 136 Ill. 525, it was said (p. 532) : "The act of the city may have been tortious, but the plaintiff had the right to waive the tort and sue in assumpsit, as the city applied the property to its own use and benefit. Where one wrongfully takes the goods of another and applies them to his own use, the owner may waive the tort, and charge the wrongdoer in assumpsit on the common counts, as for goods sold, or money received.—*Toledo, Wabash and Western Railway Co.* v. *Chew,* 67 Ill. 378."

In *Moore* v. *Shields,* 121 Ind. 268, it was held, that, "where a party is induced by fraudulent representations to purchase worthless township warrants, he can recover the money paid by him to those, knowingly making such repre-sentations, in an action for money had and received." In *McQueen* v. *State Bank of Indiana,* 2 Ind. 413, it was held that "an action for money had and received will lie, where one man has obtained money from another through the me-dium of oppression, imposition, extortion or deceit; and the law implies a promise from such person to return it to the lawful owner."

For the reasons above stated, we are of the opinion that the judgments of the lower courts were correct. Accord-ingly, the judgment of the Appellate Court, affirming that of the circuit court, is affirmed.           *Judgment affirmed.*