554

Illinois Interior Finish Company, Appellant, v. Ben Poenie et al., Defendants.   Tillie H. Novak, Appellee.

Gen. No. 37,346.

Opinion filed November 27, 1934.

CLAUDE J. DALENBERG, for appellant.

NOVAK, TUREK & VOGEL, for appellee Tillie H. Novak.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

Plaintiff, Illinois Interior Finish Company, filed its bill of complaint in the circuit court to enforce its claim for mechanic's lien as a subcontractor against Ben Poenie, contractor, Tillie H. Novak, the owner of the premises described in the bill of complaint, Charles W. Novak, her husband, the Chicago Title & Trust Company, as trustee under the trust deed on record against the premises and the unknown owners of the indebtedness secured by such trust deed. Answers were filed by Tillie H. Novak, the principal defendant, and the Chicago Title & Trust Company. The other defendants were defaulted. The cause was referred to master in chancery Wm. A. Doyle. He found in his

report that plaintiff was not entitled to a mechanic's lien. The chancellor overruled exceptions to the master's report and entered a decree approving said report and dismissing plaintiff's bill of complaint for want of equity. This appeal followed.

Plaintiff's bill alleged that the defendant Tillie H. Novak was the owner of the premises in question on August 9, 1929, and thereafter; that she entered into a contract with her codefendant Ben Poenie for the construction of a building thereon, the terms and provisions of which were unknown to plaintiff; that plaintiff had a contract with Poenie to furnish the lumber and millwork to be used in the construction of a building on the premises and that such lumber and millwork were furnished under its contract with Poenie or upon his order, for which there remained due and unpaid a balance of $3,386.35 and interest thereon from March 27, 1929.

The Chicago Title & Trust Company, by its answer, claimed an interest in the premises by reason of the trust deed under which it was trustee and neither admitted nor denied the allegations of the bill, but called for strict proof thereof.

Tillie H. Novak was the only defendant who participated in the hearings. She filed an answer wherein she admitted that she was the owner of the premises in question, but denied that she had a contract with her codefendant Ben Poenie for the construction of the building thereon, and neither admitted nor denied the other allegations of the bill. She then alleged as an affirmative defense that she had a contract with the Novak Agency & Loan Company, a corporation (hereinafter referred to as the Novak Company), by the terms of which that company agreed to construct and complete the building for her at an agreed price of $82,475.40, free from "all claims, liens and charges."

There was no contest at the hearings before the master or the chancellor except as to the issues raised

by the affirmative defense set up in the answer of defendant Tillie H. Novak.

Plaintiff contends (1) that the purported contract between Tillie H. Novak and the Novak Company was fraudulent and a subterfuge because she and the Novak Company were in reality one and the same interest and therefore the alleged building contract was not effective to bar its lien right; (2) that, if the contract between Tillie H. Novak and the Novak Company had any effect as between the parties thereto, it would not operate to bar the lien right of plaintiff because the preponderance of the evidence does not show that plaintiff had any notice of such contract; and (3) that evidence relating to any agreement on plaintiff's part to give a waiver of lien as a condition to its being awarded the contract for the lumber and millwork by Ben Poenie should have been disregarded as being inadmissible under the pleadings and incompetent under the law.

The theory of the principal defendant, Tillie H. Novak, is that, under her contract with it, the Novak Company as the original contractor agreed to construct the building in question and deliver it to her free from liens; and that before plaintiff made its contract with Ben Poenie, a subcontractor, to furnish the millwork and lumber for the building, plaintiff had notice of the no-lien provision of the original contract and expressly agreed to claim no lien.

It appeared that on September 1, 1928, Tillie H. Novak acquired title to the property at 11932-36 Stewart avenue, Chicago, upon which the building in question was thereafter erected; that negotiations for its acquisition by her were carried on by the Novak Company for more than a month prior to the above date; that during August, 1928, the Novak Company made arrangements for the erection of a three-story 19-apartment brick building on the property; that Poenie was given the contract for the carpenter work; that

plaintiff was awarded the contract to furnish lumber and millwork by Poenie and supplied same to the amount of $11,073.28; and that it was paid $7,686.93, leaving a balance of $3,386.35 due and unpaid. Evidence was offered in Tillie H. Novak's behalf that she had no contract with Poenie, but that she entered into a contract with the Novak Company July 14, 1928, whereby it undertook to construct the building and deliver it complete to her free of liens for $82,475.40; and that it in turn awarded the contract to Poenie for the carpenter work.

The general contract between Tillie H. Novak and the Novak Company, received in evidence by the master, purported to have been signed by Tillie H. Novak and the Novak Company, by Charles W. Novak, treasurer, who was Tillie H. Novak's husband. It was attested by E. E. Novak, assistant secretary of the company, who was the son of Charles W. and Tillie H. Novak.

It appeared that the Novak Company was incorporated November 29, 1920; that John W. Novak, Tillie H. Novak and E. V. Novak comprised its first board of directors; and that Tillie H. Novak, John W. Novak, Frank Novak and E. V. Novak were its incorporators.

The following syndicate agreement involving the premises in question was received in evidence by the master:

"August 1st, 1928

"We the undersigned agree to enter into a syndicate to erect an nineteen-apartment building on Stewart Avenue between 119th and 120th Streets, Chicago, Illinois, and each will have an interest in the said real estate according to the amount set opposite their respective names.

"It is understood that the undersigned are to be subcontractors on the said building and that the amounts

set opposite their names shall be deducted from their contracts.

"Below are listed the by-laws of the syndicate and are understood by all the members thereof.

"First: In case any member wishes to sell his interest in the said building he is to offer his interest to the syndicate itself.

"Second: If the syndicate does not wish to purchase same then the member can offer same to any member of the syndicate with the majority consent of same.

"Third: The selling member has the privilege to sell his interest to an outsider providing the syndicate or any member refuses to purchase his interest with the approval of the syndicate.

"It is further understood that the Novak Agency and Loan Co. are making arrangements for a sixty thousand dollar first mortg. bond issue at six per cent interest and five per cent commission with prepayments starting two years after date. Such further and other financing to be made with the approval of the syndicate. The total cost of the ground being 75 x 125 is $8,900 cash.

| | |
|---|---|
| "Novak Agency Loan Company, By E. E. Novak, Asst. Treas. | $3000.00 |
| "M. J. O'Donnell | 2500.00 |
| "J. P. Roggeveen | 2500.00 |
| "Kensington Concrete Co. by A. Lagerwey | 3000.00 |
| "Harper & Barce, by Geo. Harper | 2500.00 |
| "Bernard Poenie | 3000.00" |

Poenie's proposal to do the carpenter work on the building and its acceptance is as follows:

"August 2, 1928; Novak Agency.

"I propose to furnish lumber and millwork, stain, rough hardware and all carpenter work and labor on the 19 flat apartment to be erected by a Syndicate and agree to come in the Syndicate for the sum of $3000.00

and will do the job for the sum of $20,000. It is understood that I am to have an interest in the above building to the extent of $3000.00.

"Signed Ben Poenie.

"Above accepted
Novak Agency and Loan Company
By E. E. Novak
Assistant Secretary."

That portion of par. 21, chapter 82, Cahill's Illinois Revised Statutes, pertinent to this controversy, is as follows:

"If the legal effect of any contract between the owner and contractor is that no lien or claim may be filed or maintained by any one, such provision shall be binding; but the only admissible evidence thereof as against a sub-contractor or material man, shall be proof of actual notice thereof to him before any labor or material is furnished by him; or proof that a duly written and signed stipulation or agreement to that effect has been filed in the office of the recorder of deeds of the county or counties where the house, building or other improvement is situated, prior to the commencement of the work upon such house, building or other improvement, or within ten days after the execution of the principal contract or not less than ten days prior to the contract of the sub-contractor or material man."

There is neither proof nor contention that any written no-lien stipulation or agreement was filed in the office of the recorder of deeds as provided in the above section of the statute. Whether or not plaintiff received *actual* notice of the no-lien provision of the purported original or general contract must be determined from the conflicting testimony of various witnesses as to what transpired at a certain conference held at the office of the Novak Company the latter part of July or early in August, 1928.

Garrett Yonker, general manager of plaintiff, testified that while others were in the office the only participants in the conference were Poenie, Charles W. Novak and himself.

Edward E. Novak, assistant secretary of the Novak Company, and Dwight M. Nelson, a salesman for the company, testified that they were present and participated in the conference.

Charles W. Novak testified that he told Yonker at that conference that the building was not completely financed and "before we let Mr. Poenie have this contract we would have to . . . before we could let him have the contract for this carpenter work for this building, the millwork and the lumber work, that this building not being financed and that the contract between Tillie H. Novak and the Novak Agency & Loan Company provided that there should be no liens against these premises and that if they wanted to furnish Poenie the lumber . . . if they wanted to furnish the lumber on this job, there could be no lien filed for those reasons and that the Sterling Lumber & Supply Company, who had furnished material for us for a good many years, were willing to have . . . were willing to furnish this job under those circumstances and conditions."

Ben Poenie testified in reference to the same conference that this meeting came about because Yonker wanted to sell the lumber on this job; that "Mr. Novak says 'if it doesn't make any difference to you, I would like to have the Sterling Lumber Company furnish the lumber. We know about how far they go and if we don't have enough'—he didn't have all his bids in—'it made up a lien on the agent.' " He further testified "Mr. Novak got the bills together and figured out how much each and every item is and counted it up and probably they would be a little money short, so Mr. Novak said if we buy lumber off of the Sterling Lum-

ber Company, which company we very well know, we could always get a hand from them people, but we must have a waiver of lien in full which each and every of their boys are willing to give and we can bank on the Sterling Lumber Company that he will do as he says.''

Edward E. Novak testified that they had placed a $60,000 first mortgage on the property through a Mr. Bell; that as a consequence there would be a considerable shortage of money; that they contemplated further financing; that he was wondering what Yonker would do about his bill; that Yonker then said ''why if you can get along with one lumber company, there is no reason why you can't go along with us.'' Edward E. Novak further testified that there could be no liens filed against this building; that Yonker asked why and he said that he would not go into a lot of detail but that there absolutely could not be any liens because it would jeopardize the interest of the first mortgage holder and they couldn't stand for it.

Dwight M. Nelson testified: ''Edward E. Novak and myself brought up the discussion. We wanted an understanding that, if the lumber and millwork was to be furnished by the Illinois Interior Finish Company, they would furnish us with waivers of lien before we gave them a final payment of money, because the building at the present time was not thoroughly financed; that it was only financed by a first mortgage of $60,000; that a second mortgage couldn't be made until we had the building completed.''

Garrett Yonker testified that the conference was about the purchase of material; that Mr. Novak had been buying his material from the Sterling Lumber and Supply Company and that the Sterling Lumber and Supply Company was inclined to be more or less lenient with him; that they were limited in the amount that they could draw from the loan from time to time,

and that Mr. Novak wanted plaintiff to be satisfied to go along and get part of the money due on the 10th of the month following deliveries, instead of getting all that was due.

It was disclosed that, although the purported original contract was executed in duplicate, no copy of it was ever given to Tillie H. Novak, both copies remaining in the office of the Novak Company.

Did Tillie H. Novak enter into a bona fide contract with the Novak Company for the construction and completion of the building in question free from liens, and did plaintiff have *actual* notice of such contract and its no-lien provision?

The record discloses that the Novak Company corporation was a family affair, the directing head being Charles W. Novak, the husband of Tillie H. Novak. None other than members of the Novak family appears to have any interest in the corporation, either as stockholders, officers or directors. Tillie H. Novak was one of its incorporators and a member of its first board of directors. The record is silent as to whether she was a stockholder and officer at the time her alleged contract with the Novak Company was executed. Although, according to Novak, both copies of the contract between Tillie H. Novak and the Novak Company reposed in the office of the Novak Company at that time, it is not even suggested that the contract or a copy of it was exhibited to plaintiff's manager, Yonker, on the occasion of the conference or at any other time prior to the award of the contract to plaintiff by Poenie for the lumber and millwork, or prior to the time plaintiff delivered same.

It is significant that in Poenie's contract for the carpenter work, approved by E. E. Novak, assistant secretary of the Novak Company, no mention was made of an original contract between Tillie H. Novak and the Novak Company containing a no-lien provision.

It is also significant that no mention of such a no-lien original contract was made in plaintiff's contract with Poenie to furnish the lumber and millwork.

Novak & Company was not authorized under its charter powers to engage in the building business, and it does not appear in this cause that it actually performed any of the construction work on the building in question. It appears rather that it simply awarded the contracts for the various phases of construction necessary to complete the building.

Yonker, plaintiff's manager, testified that neither Charles W. Novak, nor any of the other Novaks, nor any other person advised him on the occasion of the conference or at any other time that there ever had been executed a contract between Tillie H. Novak and the Novak Company containing a no-lien provision. He testified further that he was informed at the conference that the building was to cost $82,475.40; that the Novaks were able to secure a first mortgage building loan of but $60,000; that such loan constituted all of the money available for the erection of the building, and that it would be insufficient to pay all of the contractors, subcontractors and material men in full; and that it would be necessary to secure additional funds through a second mortgage, but that same could not be negotiated until the building was completed. He also testified that the only request made of him by any of the Novaks was that plaintiff indulge them to the extent of not insisting upon the payment of the full amount due it each month for materials furnished under its contract, because of their limited financing, and that plaintiff did so indulge them.

The contract between Tillie H. Novak and the Novak Company purports to have been executed July 14, 1928, yet the syndicate agreement of August 1, 1928, which recites that $8,900 was paid for the vacant property, the title to which was thereafter taken in the

name of Tillie H. Novak, is absolutely silent in so far as evidencing any equitable interest of Tillie H. Novak in the property. That agreement does set forth the various beneficial interests of the members of the syndicate and evidences the fact that several contractors, including Poenie, agreed to have certain portions of the amounts due them under their building contracts withheld and applied to their interests under the syndicate agreement.

It unmistakably appears from the evidence that Tillie H. Novak had no interest in the property except as a nominal owner and that she was holding title to the property in secret trust for a syndicate consisting of the Novak Company and others. We seriously doubt from the evidence that the purported contract between Tillie H. Novak and the Novak Company was in existence either when plaintiff was awarded the contract to furnish the lumber and millwork or when it delivered such material that went into the construction of the building in question. If there was such a contract, the evidence, in our opinion, is conclusive that its existence was secret, and that it was first brought to light in support of Tillie H. Novak's defense to this proceeding. If in any conceivable case a court of equity should look through the form to the substance, it should do so in a case like this.

If we assume that Tillie H. Novak was the equitable owner as well as the legal holder of the title to the premises, still the contract between her and the Novak Company could not avail to deprive plaintiff of its lien right. The record is replete with convincing evidence that the interests of the Novaks, husband, wife and sons, are to all intents and purposes identical. If Tillie H. Novak was the equitable owner of the property, or had any equitable interest therein, there is ample justification for holding that the corporation was a mere agency or instrumentality for her and

could not legally contract with her as a principal for the erection of the building.

In such cases as this the courts will not permit themselves to be blinded nor deceived by mere forms of law, but, regardless of the fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require. (*Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n,* 247 U. S. 490.)

If we consider this case in what we think is its true aspect, i.e., that Tillie H. Novak had no equitable interest in the property but was simply a nominal holder of the title in secret trust for the benefit and use of the Novak Company and others, the conclusion is inevitable that the contract between Tillie H. Novak and the Novak Company, whenever it was executed, was nothing more than a device calculated to circumvent the rights of plaintiff and other subcontractors. In our opinion, in its legal effect, it amounted to nothing more than a contract of the Novak Company with itself and was merely an attempt, through the subterfuge of using the corporate name and entity, to deprive plaintiff of its lien right.

A corporation is often organized and used to act as a cloak for fraud. Such cases are becoming common and the courts are becoming more and more inclined to ignore the corporate existence, when necessary, in order to circumvent fraud. (*Donovan v. Purtell,* 216 Ill. 629; *Lachman v. Martin,* 139 Ill. 450; Cook on Corporations, 5th edition, section 663.)

The following pertinent portion of the opinion in *Bank v. Trebein,* 59 Ohio St. 316, is quoted with approval by Justice Magruder in the case of *Donovan v. Purtell, supra,* at page 639:

"The fiction, by which an ideal legal entity is attributed to a duly formed incorporated company, existing separate and apart from the individuals composing it, is of such general utility and application, as frequently

to induce the belief that it must be universal, and be, in all cases adhered to, although the greatest frauds may thereby be perpetrated under the fiction as a shield. But modern cases, sustained by the best text writers, confine the fiction to the purposes for which it was adopted—convenience in the transaction of business and in suing and being sued in its corporate name, and the continuance of its rights and liabilities, unaffected by changes in its corporate members; and have repudiated it in all cases where it had been insisted on as a protection to fraud, or any other illegal transaction.''

In our opinion the contract which purported to have been executed by Tillie H. Novak and the Novak Company, even if in existence at and prior to the date of the award of the contract for the lumber and millwork by Poenie to plaintiff, was ineffective to bar plaintiff's right to recover in this cause, even though actual notice had been given plaintiff predicated upon the no-lien provision of such contract. We think that the contract was conceived in fraud by the Novak Company and its officers and was, therefore, ineffective and of no legal force for any purpose.

If the legal effect of any contract between the owner and the original contractor is that no lien or claim may be filed or maintained by anyone, such a provision is binding upon subcontractors or material men if they receive the notice required by statute. In the case of those furnishing material "the only admissible evidence as against . . . material man shall be proof of actual notice thereof to him before any . . . material is furnished by him.'' Both the master in his report and the chancellor in his decree found that prior to the acceptance of its contract plaintiff had actual notice that the contract between the owner and the original contractor provided that the building in question when completed should be delivered to the owner free from all liens.

We are convinced, after a painstaking examination and careful consideration of all the evidence produced before the master, that such findings of the master and court are erroneous and against the manifest weight of the evidence. There is not a scintilla of evidence in the record as to such actual notice except that of Charles W. Novak, who testified that on the occasion of the conference he told plaintiff's manager of the existence of the contract between Tillie H. Novak and the Novak Company and its no-lien provision. Neither his son nor any other person claiming to have participated in that conference corroborated him in the slightest degree as to the alleged statement made by him to plaintiff's manager relative to the existence of such a contract. If, as is now asserted, both copies of the contract were in the office of the Novak Company at the time of the conference it would have been an easy matter to have exhibited the contract itself to Yonker. Charles W. Novak's evidence is discredited by reason of the nature of the entire transaction.

The burden was upon Tillie H. Novak to prove actual notice to plaintiff of the no-lien provision of the contract in question. We think that she utterly failed to shoulder that burden. In our opinion, both the master and the trial court were confused by the attempt of Tillie H. Novak to show that plaintiff, prior to the acceptance of its contract and the delivery of the material by it, agreed to sign a full and complete waiver of lien, even though it had not been paid in full for the material furnished. No such issue was raised by her answer. The only defense alleged in Tillie H. Novak's answer was that plaintiff was bound by the no-lien provision of the contract between her and the Novak Company, and the cause proceeded to hearing upon that one issue.

It matters not that evidence was admitted by the master to the effect that plaintiff agreed to waive its right to the lien. The defendant in chancery is bound

to apprise the plaintiff by his answer of the defense he intends to set up and he cannot avail himself of any matter of defense which is not stated in his answer, even though it should appear in evidence. (*Crone v. Crone,* 180 Ill. 599; *Johnson v. Johnson,* 114 Ill. 611.)

Under general allegations specific facts may be proven, provided the general charge is sufficient to apprise the adverse party of the nature of the evidence to be introduced. (21 C..J. 553, section 677.) There were no allegations in her answer that could have been interpreted as apprising plaintiff that Tillie H. Novak was going to offer the defense that plaintiff agreed to waive its right to a mechanic's lien.

The very object of pleadings requires that the parties be confined to the matters contained therein, and therefore no evidence will be considered except that relating to matters alleged in the bill or answer. (C. J. 552, section 676.)

We are constrained to hold, under all the facts and circumstances of this cause, that Tillie H. Novak did not enter into a bona fide contract with the Novak Company for the erection and completion of the building in question free from liens, and that, regardless of the character or nature of such a contract, if it were executed, plaintiff did not receive *actual* notice, either of its existence or of its no-lien provision.

For the reasons indicated the decree of the circuit court is reversed and the cause is remanded with directions to enter a decree in conformity with the views herein expressed.

*Reversed and remanded with directions.*

GRIDLEY, P. J., and SCANLAN, J., concur.