HERBERT SHER, Plaintiff-Appellant, *v.* STEPHEN H. ROBIN *et al.* Defendants-Appellees, (NORTH SHORE SPEED AND AUTO, INC., Additional Party Defendant.)

(No. 54225;

First District—December 23, 1970.

Mortimer & Hoffman, of Chicago, for appellant.

Concannon, Dillon, Snook & Morton, of Chicago, (Herbert Morton, of counsel,) for appellees.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Herbert Sher, brought a cause of action against Stephen H. Robin (hereinafter referred to as defendant) and Lee Dreyfus for rescission of an agreement for the sale of an automotive speed equipment corporation, North Shore Speed and Auto, Inc. Plaintiff also requested damages, both actual and punitive, and other relief. Upon plaintiff's motion during trial, Dreyfus was dismissed as a party defendant. The complaint alleged that plaintiff was induced to make the purchase in reliance upon fraudulent material misrepresentation perpetrated by defendant and Dreyfus. Defendant counterclaimed against plaintiff and the corporation for sums paid by him for advertising on behalf of the corporation.

The trial court found there were no misrepresentations as alleged by plaintiff and entered judgment in defendant's favor. The court also entered judgment against the corporation and the plaintiff individually in defendant's favor on his counterclaim for $6,555.13. Plaintiff alone appeals from these judgments.

The North Shore Speed and Auto, Inc. was in the business of selling automotive parts. A substantial portion of its sales were through mail orders solicited by catalog. In the spring of 1966, defendant was desirous of selling the business and contracted with a business broker to seek a purchaser.

Plaintiff responded to an advertisement regarding the sale of the business and was introduced to defendant whereupon they entered into negotiations for its sale. At one of the meetings between the parties plaintiff was accompanied by Lee Howard Treschansky, a lawyer with an accounting background. Defendant was present with his accountant Dreyfus who presented the financial statements of the business which were later introduced into evidence as Plaintiff's Exhibit #7. The statements consisted of a balance sheet as of March 31, 1966, a statement of income and retained earnings for the year ending March 31, 1966, and a statement of income for three months ending March 31, 1966. The statements contained a notation that they had been prepared from books and records without audit or verification and were presented without opinion.

The purchase was consumated on June 10, 1966. On September 2, 1966, plaintiff filed this lawsuit resulting in judgment in favor of defendant.

Plaintiff appeals and contends that the judgments were against the manifest weight of the evidence.

In *Broberg v. Mann*, 66 Ill.App.2d 134 (1965), the court expressed the following pertinent language at page 139:

"Comprehensively stated, a misrepresentation to be the basis of a

charge of fraud, either in a suit at law or in equity, must contain the following elements:

(1) It must be a statement of a material fact, as opposed to opinion;

(2) it must be untrue;

(3) the party making the statement must know or believe it to be untrue;

(4) the person to whom the statement is made must believe and rely on it, and have a right to do so;

(5) it must have been made for the purpose of inducing the other party to act; and

(6) the reliance by the person to whom the statement is made must lead to his injury.

[Cases cited.]"

Plaintiff contends that the evidence established defendant fraudulently misrepresented the gross profit margin of the business to be 40 per cent when in fact the actual figure was 23-30 per cent. However, defendant maintains that plaintiff failed to show that the representation was untrue.

Plaintiff testified that at an early stage in the discussions concerning the sale of the busines, defendant orally represented the gross profit margin to be 40%; that at a subsequent meeting defendant and Dreyfus presented him with Plaintiff's Exhibit #7 which included the income statement for the year ending March 31, 1966, reflecting a gross profit margin of 40 per cent; and that after taking over the business he discovered that the gross profit margin on the average catalog item was 30%.

Defendant testified that the gross profit margin enjoyed by the business was 40 per cent and that the principal reasons for the substantial gross profit margin were purchases of specials and close-outs on speed equipment from suppliers and sales of nationally known equipment at less than ordinary discounts. However, he was unable to show where such transactions were reflected in the business records of the company. Prior to trial defendant had stated in his deposition that the gross profit margin was 30%.

Treschansky testified that when he and plaintiff were presented with the income statement, he attempted to check the 40% gross profit margin by comparing invoices with catalog list prices on randomly selected items and that his calculations did in fact verify the gross profit margin to be 40%. However, he failed to explain whether he discounted the list price by the amount shown on the "Discount Sheet" * in the catalog.

Dreyfus testified that he prepared for defendant the income statement contained in Plaintiff's Exhibit #7 which reflected a 40 per cent gross

---

* The "Discount Sheet" reflected a 20-40% discount on most items.

margin of profit; that he prepared the income statement from books and records kept by defendant, but that he made no verifications. He also prepared the corporate federal income tax return for the same fiscal year ending March 31, 1966 (Plaintiff's Exhibit #8) from figures given him by defendant which reflected a gross profit margin of 27.56 per cent. The discrepancy between the "cost of goods sold" figures on the income tax return and on Plaintiff's Exhibit #7 was due, he said, to additional expenses which defendant told him to include on the tax return without providing him information as to their nature.

Both the income statement (Plaintiff's Exhibit #7) employed by defendant in negotiating the sale to plaintiff, and the income tax return (Plaintiff's Exhibit #8) were prepared some months after the close of the income period in question. Comparing the two documents, we find that the figures for gross sales ($186,125.26) were identical; as were the figures for total operating expense ($51,018.22). On the statement shown to plaintiff, however, the figure for cost of goods sold was shown as $110,211.74, whereas the income tax return showed that item as $134,820.89. This discrepancy resulted in a figure of $24,895.30 for net income (before taxes) on the income statement, and $286.15 on the tax return.

■■ From this it appears indisputable that defendant sought to defraud either defendant or the federal government, and understandably, it has not been argued in this court that the income tax return was false. The importance to a prospective buyer of the cost of goods cannot be overestimated. Defendant had control of all the business records, and when he advised plaintiff that the goods purchased for resale during the previous year had cost $110,211.74, plaintiff was entitled to rely on that statement of past fact. That this is a critical item can be seen from the fact that in the statement it produced a net profit (before taxes) amounting to 13% of sales, whereas in the tax return the net profit was only 15/100 of 1%.

Theodore Perry, an accountant, was appointed by the court to determine the liabilities of the business at the time of sale and to ascertain the net income for the year ending March 31, 1966. Perry testified that the income statement he prepared for the period of time in question (corresponding to the period of time reflected in the income statement in Plaintiff's Exhibit #7) reflected a gross profit margin of 46.8 per cent; that his figures were taken from the books and records of the business which were incomplete; that he believed that such a substantial gross profit margin did not truly reflect the operations of the business; and that from his experience mail order businesses generally reflect a 30 per cent gross margin of profit.

In view of the foregoing we find that plaintiff has established that defendant misrepresented the gross margin of profit. The testimony of plaintiff as to the true gross margin of profit was substantiated by the corporate income tax return filed at the direction of defendant which reflected a gross profit margin of 27.56 per cent. Additionally, defendant's testimony was impeached by his prior deposition wherein he stated that the gross margin of profit was 30 per cent. Defendant failed to substantiate any of his testimony relating to gross margin of profit except for placing reliance upon Plaintiff's Exhibit #7. However, Dreyfus, who prepared the exhibit, testified that it was calculated from the books and records kept by defendant without verification and Perry testified that the books and records were incomplete and not truly reflective of the operations of the business.

Therefore, we hold that the trial court erred in entering judgment for defendant. In view of this holding we need not discuss plaintiff's other contentions as they pertain to the issues raised by his complaint.

Plaintiff also appeals from a judgment entered against him on the counterclaim. After plaintiff had acquired the corporation, he ordered advertising from an agency which, when not paid, instituted a cause of action against the corporation. Defendant paid the bill and subsequently filed his counter-claim in the present action resulting in judgment against plaintiff individually and the corporation. Defendant testified that the advertising agency called and advised him of the nonpayment, that he never spoke to plaintiff about it nor advised him that he, defendant, was going to pay it, nor did plaintiff request him to make payment.

Defendant further testified that one of the partners in the advertising agency was a close friend and by virtue of this relationship, the agency rebated 15 per cent of the agency commission to defendant. Defendant promised this friend at the agency that he, defendant, would be personally liable for bills and would advise his friend if the business was ever sold, but failed to advise him because plaintiff told defendant he would place advertising with another agency.

Defendant argues that the trial court correctly ignored the corporate fiction and in support of his position cites *Donovan v. Purtell,* 216 Ill. 629 (1905) wherein the court there expressed the view that as a protection against fraud or any other illegal transaction the corporate shield will not avail any protection. There is no evidence of such conduct by plaintiff and the authority is not therefore applicable in resolving the issue.

We note that defendant himself was aware of the fiction by which a corporate legal entity is separate and apart from the person or persons composing it, and manifested this awareness by advising the agency that

he would be personally liable for the corporation's advertising debts. Under the facts and circumstances in the case at bar, we find that the judgment on the counterclaim is against the manifest weight of the evidence.

Therefore, both judgments as to plaintiff are reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

DRUCKER and ENGLISH, JJ., concur.